UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA            :

        - v -                       :    04 Cr. 273 (NRB)

ANTHONY COLOMBO, et al.
Including CHRISTOPHER COLOMBO      :

            Defendants.             :

- - - - - - - - - - - - - - - - - -x

REQUESTS TO CHARGE SUBMITTED
ON BEHALF OF CHRISTOPHER COLOMBO

ROTHMAN, SCHNEIDER,
    SOLOWAY & STERN, LLP
Attorneys for CHRISTOPHER COLOMBO
100 Lafayette Street, Ste. 501
New York, New York  10013
(212) 571-5500

JEREMY SCHNEIDER
ANNE ULEVITCH CANTOR
- Of Counsel –

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA          :

      - v -                    :          04 Cr. 273 (NRB)

ANTHONY COLOMBO, et al.
Including CHRISTOPHER COLOMBO    :

         Defendants.          :

- - - - - - - - - - - - - - - - - -x


## CHRISTOPHER COLOMBO'S REQUESTS TO CHARGE

Pursuant to Rule 30 of the Federal Rules of Criminal Procedure, MR. CHRISTOPHER COLOMBO respectfully requests that the Court include the following in its charge to the jury.

**TABLE OF CONTENTS**

Request No.                    Description                              Page

General Requests . . . . . . . . . . . . . . . . . . . . . . . .    1

1.   Summary of Indictment . . . . . . . . . . . . . . . . . .    2

2.   Consider Each Defendant Separately  . . . . . . . . . .    3

3.   Multiple Defendants - Multiple Counts . . . . . . . . .    4

4.   Count One: Racketeering Enterprise - The Indictment and
     The Statute . . . . . . . . . . . . . . . . . . . . . . .    5

5.   Count One: Racketeering Enterprise - Prejudice from the
     Word "Racketeering" . . . . . . . . . . . . . . . . . . .    6

6.   Count One: Racketeering Enterprise - Elements of the
     Offense . . . . . . . . . . . . . . . . . . . . . . . . .    7

7.   Count One: Racketeering Enterprise - First Element -
     The Enterprise  . . . . . . . . . . . . . . . . . . . . .    8

8.   Count One: Racketeering Enterprise - Second Element -
     Effect on Interstate Commerce . . . . . . . . . . . . .   10

9.   Count One: Racketeering Enterprise - Third Element -
     Association With the Enterprise . . . . . . . . . . . .   11

10.  Count One: Racketeering Enterprise - Fourth Element -
     Engaging in a Pattern of Racketeering Activity  . . . .   12

11.  Count One: Racketeering Enterprise - Unanimity on
     Racketeering Acts . . . . . . . . . . . . . . . . . . . .   17

12.  Count One: Racketeering Enterprise - Fifth Element -
     Conducting or Participating in the Enterprise Through
     the Pattern of Racketeering Activity  . . . . . . . . .   18

13.  Count Two: RICO Conspiracy - The Indictment and The
     Statute . . . . . . . . . . . . . . . . . . . . . . . . .   20

14.  Count Two: RICO Conspiracy - Elements of the Offense. .   21

15.  Count Two: RICO Conspiracy - First Element - The
     Enterprise  . . . . . . . . . . . . . . . . . . . . . . .   22

16. Count Two: RICO Conspiracy - Second Element - Effect on Interstate Commerce . . . . . . . . . . . . . . . . . . . 23

17. Count Two: RICO Conspiracy - Third Element - Association With the Enterprise . . . . . . . . . . . . . . . . . . . 24

18. Count Two: RICO Conspiracy - Fourth Element - Membership in the Conspiracy . . . . . . . . . . . . . . . . . . . . 25

19. Count Three: Gambling Conspiracy . . . . . . . . . . . . 27

20. Count Three: Gambling Conspiracy - Elements of Conspiracy . . . . . . . . . . . . . . . . . . . . . . . . 28

21. Count Three: Gambling Conspiracy - First Element - Existence of Agreement . . . . . . . . . . . . . . . . . 29

22. Count Three: Gambling Conspiracy - Second Element - Membership in the Conspiracy . . . . . . . . . . . . . . 31

23. Count Three: Gambling Conspiracy - Third Element - Commission of Overt Act . . . . . . . . . . . . . . . . 35

24. Count Three: Gambling Conspiracy - Fourth Element - Commission of Overt Act in Furtherance of Conspiracy . . 37

25. Count Three: Gambling Conspiracy - Acts and Declarations of Co-Conspirators . . . . . . . . . . . . . . . . . . . . 38

26. Count Four: Operation of Illegal Gambling Business - The Indictment and the Statute . . . . . . . . . . . . . . . 40

27. Count Four: Operation of Illegal Gambling Business - Elements of the Offense . . . . . . . . . . . . . . . . . 41

28. Count Four: Operation of Illegal Gambling Business - First Element - Gambling Business was Illegal Under State Law . . . . . . . . . . . . . . . . . . . . . . . . 42

29. Count Four: Operation of Illegal Gambling Business - Second Element - Substantially Continuous Operation or Gross Revenues of $2000 in Any One Day . . . . . . . . . 43

30. Count Four: Operation of Illegal Gambling Business - Third Element - Five or More Persons Conducted Gambling Business . . . . . . . . . . . . . . . . . . . . 45

31. Counts Five and Six: Transmission of Wagering Information - The Indictment and the Statute . . . . . . 47

32. Counts Five and Six: Transmission of Wagering
    Information - Elements of the Offense . . . . . . . . . . 48

33. Counts Five and Six: Transmission of Wagering
    Information - First Element - Defendant Engaged in
    Gambling Business . . . . . . . . . . . . . . . . . . . . 49

34. Counts Five and Six: Transmission of Wagering
    Information - Second Element - Use of a Wire Communication
    Facility to Transmit Wagering Information . . . . . . . 50

35. Counts Five and Six: Transmission of Wagering
    Information - Third Element - Interstate Facility . . . . 51

36. Counts Five and Six: Transmission of Wagering
    Information - Fourth Element - Defendant Acted
    Knowingly . . . . . . . . . . . . . . . . . . . . . . . . 52

37. Count Seven: Use of Interstate Facility in Aid of
    Racketeering - The Indictment and the Statute . . . . . . 53

38. Count Seven: Use of Interstate Facility in Aid of
    Racketeering - Elements of the Offense. . . . . . . . . . 54

39. Count Seven: Use of Interstate Facility in Aid of
    Racketeering - First Element - Use of An Interstate
    Facility . . . . . . . . . . . . . . . . . . . . . . . . 55

40. Count Seven: Use of Interstate Facility in Aid of
    Racketeering - Second Element - Intent to Engage in
    Unlawful Activity . . . . . . . . . . . . . . . . . . . . 57

41. Count Seven: Use of Interstate Facility in Aid of
    Racketeering - The Required Knowledge . . . . . . . . . . 59

42. Count Seven: Use of Interstate Facility in Aid of
    Racketeering - State Crime is an Element of the
    Offense . . . . . . . . . . . . . . . . . . . . . . . . . 60

43. Count Seven: Use of Interstate Facility in Aid of
    Racketeering - Business Enterprise Requirement for
    Prosecutions Involving Gambling . . . . . . . . . . . . . 61

44. Count Seven: Use of Interstate Facility in Aid of
    Racketeering - Third Element - Subsequent Act in
    Furtherance of the Unlawful Activity . . . . . . . . . . 62

45. Count Eight: Conspiracy to Make Extortionate Extensions
    of Credit . . . . . . . . . . . . . . . . . . . . . . . . 63

46. Count Eight: Conspiracy to Make Extortionate Extensions
    of Credit - Elements of Conspiracy . . . . . . . . . . 64

47. Count Eight: Conspiracy to Make Extortionate Extensions
    of Credit - First Element - Existence of Agreement . . . 65

48. Count Eight: Conspiracy to Make Extortionate Extensions
    of Credit - Second Element - Membership in the
    Conspiracy . . . . . . . . . . . . . . . . . . . . . . 66

49. Count Eight: Conspiracy to Make Extortionate Extensions
    of Credit - Third Element - Commission of Overt Act . . 67

50. Count Eight: Conspiracy to Make Extortionate Extensions
    of Credit - Fourth Element - Commission of Overt Act in
    Furtherance of the Conspiracy . . . . . . . . . . . . . 68

51. Count Nine: Conspiracy to Collect Extensions of Credit
    by Extortionate Means . . . . . . . . . . . . . . . . . 69

52. Count Nine: Conspiracy to Collect Extensions of Credit
    by Extortionate Means - Elements of Conspiracy . . . . . 70

53. Count Nine: Conspiracy to Collect Extensions of Credit
    by Extortionate Means - First Element - Existence of
    Agreement . . . . . . . . . . . . . . . . . . . . . . . 71

54. Count Nine: Conspiracy to Collect Extensions of Credit
    by Extortionate Means - Second Element - Membership in
    the Conspiracy . . . . . . . . . . . . . . . . . . . . . 72

55. Count Nine: Conspiracy to Collect Extensions of Credit
    by Extortionate Means - Third Element - Commission of
    Overt Act . . . . . . . . . . . . . . . . . . . . . . . 73

56. Count Nine: Conspiracy to Collect Extensions of Credit
    by Extortionate Means - Fourth Element - Commission of
    Overt Act in Furtherance of the Conspiracy . . . . . . . 74

57. Count Ten: Making Extortionate Extensions of Credit -
    The Indictment and the Statute . . . . . . . . . . . . . 75

58. Count Ten: Making Extortionate Extensions of Credit -
    Elements of the Offense . . . . . . . . . . . . . . . . 77

59. Count Ten: Making Extortionate Extensions of Credit -
    First Element - Extending Credit . . . . . . . . . . . . 78

60. Count Ten: Making Extortionate Extensions of Credit -
    Second Element - Possibility of Violence . . . . . . . . 79

61. Count Eleven: Collection of Extensions of Credit by
    Extortionate Means - The Indictment and the Statute . . . 80

62. Count Eleven: Collection of Extensions of Credit by
    Extortionate Means - Elements of the Offense . . . . . . 81

63. Count Eleven: Collection of Extensions of Credit by
    Extortionate Means - First Element - Collection of
    Extension Of Credit . . . . . . . . . . . . . . . . . . . 82

64. Count Eleven: Collection of Extensions of Credit by
    Extortionate Means - Second Element - Use of Extortionate
    Means . . . . . . . . . . . . . . . . . . . . . . . . . . 83

65. Count Eleven: Collection of Extensions of Credit by
    Extortionate Means - Third Element - Knowledge . . . . . 85

66. Count Sixteen: Making Extortionate Extensions of Credit -
    The Indictment and the Statute. . . . . . . . . . . . . . 86

67. Count Sixteen: Making Extortionate Extensions of Credit -
    Elements of the Offense . . . . . . . . . . . . . . . . . 87

68. Count Sixteen: Making Extortionate Extensions of Credit -
    First Element - Extending Credit . . . . . . . . . . . . 88

69. Count Sixteen: Making Extortionate Extensions of Credit -
    Second Element - Possibility of Violence . . . . . . . . 89

70. Count Seventeen: Collection of Extensions of Credit by
    Extortionate Means - The Indictment and the Statute . . . 90

71. Count Seventeen: Collection of Extensions of Credit by
    Extortionate Means - Elements of the Offense . . . . . . 91

72. Count Seventeen: Collection of Extensions of Credit by
    Extortionate Means - First Element - Collection of
    Extension Of Credit . . . . . . . . . . . . . . . . . . . 92

73. Count Seventeen: Collection of Extensions of Credit by
    Extortionate Means - Second Element - Use of Extortionate
    Means . . . . . . . . . . . . . . . . . . . . . . . . . . 93

74. Count Seventeen: Collection of Extensions of Credit by
    Extortionate Means - Third Element - Knowledge . . . . . 94

75. Count Eighteen: Making Extortionate Extensions of Credit - The Indictment and the Statute. . . . . . . . . . . . . 95

76. Count Eighteen: Making Extortionate Extensions of Credit - Elements of the Offense . . . . . . . . . . . . . . . . . 96

77. Count Eighteen: Making Extortionate Extensions of Credit - First Element - Extending Credit . . . . . . . . . . . 97

78. Count Eighteen: Making Extortionate Extensions of Credit - Second Element - Possibility of Violence . . . . . . . . 98

79. Count Nineteen: Collection of Extensions of Credit by Extortionate Means - The Indictment and the Statute . . . 99

80. Count Nineteen: Collection of Extensions of Credit by Extortionate Means - Elements of the Offense . . . . . . 100

81. Count Nineteen: Collection of Extensions of Credit by Extortionate Means - First Element - Collection of Extension Of Credit . . . . . . . . . . . . . . . . . . 101

82. Count Nineteen: Collection of Extensions of Credit by Extortionate Means - Second Element - Use of Extortionate Means . . . . . . . . . . . . . . . . . . . . . . . . . . 102

83. Count Nineteen: Collection of Extensions of Credit by Extortionate Means - Third Element - Knowledge . . . . . 103

84. Count Twenty: Conspiracy to Extort EDP - The Indictment and the Statute . . . . . . . . . . . . . . . . . . . . . 104

85. Count Twenty: Conspiracy to Extort EDP - Elements of Conspiracy . . . . . . . . . . . . . . . . . . . . . . . . 105

86. Count Twenty: Conspiracy to Extort EDP - First Element - Existence of Agreement . . . . . . . . . . . . . . . . . 106

87. Count Twenty: Conspiracy to Extort EDP - Second Element - Membership in the Conspiracy . . . . . . . . . . . . . . 107

88. Count Twenty: Conspiracy to Extort EDP - Third Element - Commission of Overt Act . . . . . . . . . . . . . . . . . 108

89. Count Twenty: Conspiracy to Extort EDP - Fourth Element - Commission of Overt Act in Furtherance of the Conspiracy . . . . . . . . . . . . . . . . . . . . . . . . 109

90. Credibility of Witnesses . . . . . . . . . . . . . . . . 110

91.  Impeachment by Prior Inconsistent Statement
     [if applicable] . . . . . . . . . . . . . . . . . . . . 113

92.  Impeachment by Felony Conviction . . . . . . . . . . . 115

93.  Accomplice Called by the Government [if applicable] . . 116

94.  Government Informers [if applicable] . . . . . . . . . 120

95.  Evidence of Past Acts [if applicable] . . . . . . . . . 121

96.  Law Enforcement Witnesses . . . . . . . . . . . . . . 122

97.  Transcripts of Tape Recordings . . . . . . . . . . . . 123

98.  Interest of Testifying Defendant [if applicable] . . . . 124

99.  Defendant's Right Not To Testify [if applicable] . . . . 125

100. Conclusion . . . . . . . . . . . . . . . . . . . . . . 126

<u>General Requests</u>

MR. CHRISTOPHER COLOMBO respectfully requests

that the Court give its usual instructions to the jury on

the following matters:

a.  Function of Court and Jury.
b.  Indictment Not Evidence.
c.  Statements of Court and Counsel Not Evidence.
d.  Burden of Proof and Presumption Of Innocence.
e.  Reasonable Doubt.
f.  Jury's Recollection Controls.
g.  Inferences.
h.  Government Treated Like Any Other Party.
i.  Definitions, Explanations and Example Of Direct and Circumstantial Evidence.
j.  Right to See Exhibits and Have Testimony Read During Deliberations.
k.  Verdict Must Be Unanimous.
l.  Verdict based solely on evidence or lack of evidence, not national origin etc., not on nature of crimes charged.
m.  What is evidence and what is not, questions not evidence, stricken testimony not evidence, anything outside courtroom not evidence.
n.  Court has no opinion and nothing said by Court should be used to infer otherwise.
o.  Number of witnesses not controlling, quality of evidence not quantity.
P.  Defendant has pled not guilty and thereby denies every essential allegation in the indictment.

**REQUEST NO. 1**

<u>Summary Of Indictment</u>

The Indictment contains a total of twenty-seven counts or charges, including sixteen against CHRISTOPHER COLOMBO.

In Counts One and Two of the indictment, Anthony Colombo, Christopher Colombo, John Berlingieri and Joseph Flaccavento are accused of conducting and conspiring to conduct the affairs of an enterprise referred to as "the Colombo Brothers Crew" through a pattern of racketeering activity. In connection with these charges, defendants are alleged to have committed two or more other crimes, including operating an illegal gambling business, loansharking, extortion, mail fraud and commercial bribery. Some of these activities then form the basis for individual charges against certain defendants in Counts Three through Twenty-Seven of the indictment.

<u>Adapted from</u> Sand, <u>Modern Federal Jury Instructions – Criminal</u>; Form Instruction 3-6.

**REQUEST NO. 2**

<u>Consider Each Defendant Separately</u>

The Indictment names five defendants who are on trial together.  In reaching a verdict, however, you must bear in mind that guilt is individual.  Your verdict as to MR. CHRISTOPHER COLOMBO must be determined separately with respect to him, solely on the evidence, or lack of evidence, presented against him without regard to the guilt or innocence of anyone else.

In addition, some of the evidence in this case was limited to one or more defendants, but not all.  Let me emphasize that any evidence admitted against some defendants may be considered only as against those defendants and may not in any respect enter into your deliberations on any other defendant.

<u>Adapted from</u> Sand, <u>Modern Federal Jury Instructions - Criminal</u>; Form Instruction 3-5.

**REQUEST NO. 3**

<u>Multiple Counts – Multiple Defendants</u>

The indictment contains a total of twenty-seven counts.
Each count charges a defendant with a different crime.

There are five defendants on trial before you.  You must, as
a matter of law, consider each count of the indictment and each
defendant's involvement in that count separately, and you must
return a separate verdict on each defendant for each count in
which he is charged.

In reaching your verdict, bear in mind that guilt is
personal and individual.  Your verdict of guilty or not guilty
must be based solely upon the evidence about each defendant.  The
case against each defendant, on each count, stands or falls upon
the proof or lack of proof against that defendant alone, and your
verdict as to any defendant on any count should not control your
decision as to any other defendant or any other count.  No other
considerations are proper.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 3-8.

**REQUEST NO. 4**

<u>Count One: Racketeering Enterprise - The Indictment and the
Statute</u>

    The indictment charges ANTHONY COLOMBO, CHRISTOPHER COLOMBO,
JOHN BERLINGIERI and JOSEPH FLACCAVENTO with membership in a
racketeering enterprise, alleged by the Government to be called
"The Colombo Brothers Crew," from in or about 1994, up to and
including 2002 in the Southern District of New York and
elsewhere, in violation of section 1962(c) of Title 18 of the
United States Code.  That section provides:

    It shall be unlawful for any person employed by or
associated with any enterprise engaged in, or the activities of
which affect, interstate or foreign commerce, to conduct or
participate, directly, or indirectly, in the conduct of such
enterprise's affairs through a pattern of racketeering activity.

    <u>See</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 52-18.

**REQUEST NO. 5**

Count One: Racketeering Enterprise - Prejudice From the Word
"Racketeering"

The word "racketeering" has certain implications in our
society.  Use of that term in this statute and in this courtroom
should not be regarded as having anything to do with your
determination of whether MR. CHRISTOPHER COLOMBO's guilt has been
proven.  The term is only a term used by Congress to describe the
statute.

See Sand, Modern Federal Jury Instructions -
Criminal; Form Instruction 52-18.

**REQUEST NO. 6**

<u>Count One: Racketeering Enterprise - Elements of the Offense</u>

In order to prove that MR. CHRISTOPHER COLOMBO violated section 1962(c), the government must establish beyond a reasonable doubt each of the following five elements of the offense:

First, that an enterprise existed from in or about 1994 up through and including in or about 2002 in the Southern District of New York and elsewhere;

Second, that the enterprise affected interstate or foreign commerce;

Third, that MR. CHRISTOPHER COLOMBO was associated with or employed by the enterprise;

Fourth, that MR. CHRISTOPHER COLOMBO engaged in a pattern of racketeering activity; and

Fifth, that MR. CHRISTOPHER COLOMBO conducted or participated in the conduct of the enterprise through that pattern of racketeering activity.

<u>See</u> Sand, <u>Modern Federal Jury Instructions - Criminal</u>; Form Instruction 52-19.

**REQUEST NO. 7**

<u>Count One: Racketeering Enterprise - First Element - The
Enterprise</u>

The first element that the government must prove beyond a
reasonable doubt is that an "enterprise" existed as alleged in
the indictment from in or about 1994, up to and including in or
about 2002.

For the purposes of this case, an enterprise includes any
legal entity, such as a partnership, corporation or association,
and some other entities as I shall define them for you.

The government has charged that the enterprise in this case
is as follows: [Read the counts or allegations which relate to
the enterprise.] If you find that this was, in fact, a legal
entity such as a partnership, corporation or association, then
you may find that an enterprise existed.

An enterprise also includes a group of people who have
associated together for a common purpose of engaging in a new
course of conduct over a period of time.  This group of people,
in addition to having a common purpose, must have an ongoing
organization, either formal or informal, and it must have
personnel who function as a continuing unit.  This group of
people does not have to be a legally recognized entity, such as a
partnership or corporation.  This group may be organized for a
legitimate and lawful purpose, or it may be organized for an
unlawful purpose.

The government has charged the following in the indictment as constituting the enterprise. [Read the counts or allegations which relate to the enterprise.] If you find that this was a group of people characterized by (1) a common purpose, (2) an ongoing formal or informal organization, and (3) by personnel who function as a continuing unit, then you may find that an enterprise existed.

If you find that this enterprise existed, you must also determine whether this enterprise continued in an essentially unchanged form during substantially the entire period charged in the indictment.  This does not mean that everyone involved has to be the same, but the core of the enterprise has to be the same throughout.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 52-20.

**REQUEST NO. 8**

<u>Count One: Racketeering Enterprise - Second Element - Effect on
Interstate Commerce</u>

The second element the government must prove beyond a
reasonable doubt is that the enterprise was engaged in or had an
effect upon interstate commerce in the Southern District of New
York and elsewhere.

Interstate commerce includes the movement of goods,
services, money and individuals between states (or between states
and the District of Columbia or a U.S. Territory or possession or
between the United States and a foreign state or nation).

The government must prove that the enterprise engaged in
interstate commerce or that its activities affected interstate
commerce in any way, no matter how minimal.  It does not have to
prove that the racketeering activity affected interstate
commerce, although proof that racketeering acts did affect
interstate commerce is sufficient to satisfy this element.  It is
not necessary to prove that the acts of any particular defendant
affected interstate commerce as long as the acts of the
enterprise had such effect.  Finally, the government is not
required to prove that any defendant knew he was affecting
interstate commerce.

> <u>See</u> Sand, <u>Modern Federal Jury Instructions -
> Criminal</u>; Form Instruction 52-21.

**REQUEST NO. 9**

<u>Count One: Racketeering Enterprise - Third Element - Association</u>
<u>With the Enterprise</u>

The third element which the government must prove beyond a reasonable doubt is that MR. CHRISTOPHER COLOMBO was associated with or employed by the enterprise.

It is not required that MR. CHRISTOPHER COLOMBO have been employed by or associated with the enterprise for the entire time that the enterprise existed. It *is* required, however, that the government prove, beyond a reasonable doubt, that at *some* time during the period indicated in the indictment, MR. CHRISTOPHER COLOMBO was employed by or associated with the enterprise.

A person cannot be associated with or employed by an enterprise if he does not know of the enterprise's existence or the nature of its activities. Thus, in order to prove this element, the government must prove beyond a reasonable doubt that MR. CHRISTOPHER COLOMBO was connected to the enterprise in some meaningful way, and that he knew of the existence of the enterprise and of the general nature of its activities.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -</u>
<u>Criminal</u>; Form Instruction 52-22.

**REQUEST NO. 10**

<u>Count One: Racketeering Enterprise - Fourth Element - Engaging in
a Pattern of Racketeering Activity</u>

The fourth element which the government must prove beyond a
reasonable doubt is that MR. CHRISTOPHER COLOMBO engaged in a
pattern of racketeering activity.

The government has charged MR. CHRISTOPHER COLOMBO with
committing the following racketeering acts: [read the charged
racketeering acts from the indictment].  You must find that MR.
CHRISTOPHER COLOMBO committed two of these acts within ten years
of each other.  You will note that one of the alleged
racketeering acts which I just read to you is the operation of an
illegal gambling business in violation of New York State Penal
Law §§ 225.00, 225.05, 225.10, 225.15 and 225.20.

In order for these state offenses to be considered as
racketeering acts, the government must prove to you beyond a
reasonable doubt the elements of those offenses, about which I
will now instruct you.

In order for the government to prove that CHRISTOPHER
COLOMBO is guilty of promoting gambling in the second degree,
N.Y.P.L. § 225.05, the government must establish beyond a
reasonable doubt the following two elements:

First, that CHRISTOPHER COLOMBO advanced or profited from
unlawful gambling activity.

Second, that CHRISTOPHER COLOMBO knowingly advanced or profited from unlawful gambling activity.

A person "advances gambling activity" when, acting other than as a player, he engages in conduct which materially aids any form of gambling activity.  Such conduct includes, but is not limited to, conduct directed toward the creation or establishment of the particular game, contest, scheme, device or activity involved, toward the acquisition or maintenance of premises, paraphernalia, equipment or apparatus therefor, toward the solicitation or inducement of persons to participate therein, toward the actual conduct of the playing phases thereof, toward the arrangement of any of its financial or recording phases, or toward any other phase of its operation.  One advances gambling activity when, having substantial proprietary or other authoritative control over premises being used with his knowledge for purposes of gambling activity, he permits such to occur or continue or makes no effort to prevent its occurrence or continuation.

A person "profits from gambling activity" when, other than as a player, he accepts or receives money or other property pursuant to an agreement or understanding with any person whereby he participates in the proceeds of gambling activity.

A person acts "knowingly" with respect to conduct or to a circumstance described by a statute defining an offense when he

is aware that his conduct is of such a nature or that such a circumstance exits.

In order to prove that CHRISTOPHER COLOMBO is guilty of N.Y.P.L. § 225.10, promoting gambling in the first degree, the government must establish beyond a reasonable doubt the following four elements:

First, that CHRISTOPHER COLOMBO advanced or profited from unlawful gambling activity;

Second, that CHRISTOPHER COLOMBO knowingly advanced or profited from unlawful gambling activity;

Third, that CHRISTOPHER COLOMBO knowingly advanced or profited from unlawful gambling activity by bookmaking; or

Fourth, that CHRISTOPHER COLOMBO knowingly advanced or profited from unlawful gambling activity by receiving, in connection with the charged gambling business, (a) money or written records from a person other than a player whose chances or plays are represented by such money or records, or (b) more than five hundred dollars in any one day of money played in such scheme or enterprise.

In order to prove that CHRISTOPHER COLOMBO is guilty of N.Y.P.L. § 225.15, possession of gambling records in the second degree, the government must establish beyond a reasonable doubt the following elements:

First, that CHRISTOPHER COLOMBO possessed a writing, paper, instrument or article;

Second, that the writing, paper, instrument or article was of a kind commonly used in the operation or promotion of a bookmaking scheme or enterprise; and

Third, that CHRISTOPHER COLOMBO had knowledge of the contents or nature of such writing, paper, instrument or article.

In order to prove that CHRISTOPHER COLOMBO is guilty of N.Y.P.L. § 225.20, possession of gambling records in the first degree, the government must establish beyond a reasonable doubt the following elements:

First, that CHRISTOPHER COLOMBO possessed a writing, paper, instrument or article of a kind commonly used in the operation or promotion of a bookmaking scheme or enterprise, and constituting, reflecting or representing more than five bets totaling more than $5,000; and

Second, that CHRISTOPHER COLOMBO had knowledge of the contents of such writing, paper, instrument or article.

You should note that for the purposes of each of these statutes, "bookmaking" is defined by the New York State Penal Law as advancing gambling activity by unlawfully accepting bets from members of the public as a business, rather than in a casual or personal fashion, upon the outcomes of future contingent events.

Adapted from Leventhal, Requests to Charge in a Criminal Case in New York; Model Charges §§ 36:4, 36:6, 36:7 (Thomson/West 2006).

To prove that the acts constituted a pattern of racketeering activity, the government must prove that the acts of racketeering

are related to each other and that they pose a threat of continued criminal activity. It is not sufficient for the government to prove only that MR. CHRISTOPHER COLOMBO committed two of the racketeering acts I have just described. A series of disconnected acts does not constitute a pattern, and a series of disconnected crimes does not constitute a pattern of racketeering activity, nor do they amount to or pose a threat of continued racketeering activity.

To prove that the acts of racketeering are related, the government must prove that the acts had the same or similar purposes, results, participants, victims, or methods of commission, or that they are otherwise interrelated by distinguishing characteristics and are not isolated events.

To prove that the racketeering acts pose a threat of continued racketeering activity, the government must establish that (1) the acts are part of a long-term association that exists for criminal purposes; or (2) the acts are a regular way of conducting the defendant's ongoing legitimate business; or (3) the acts are a regular way of conducting or participating in an ongoing and legitimate RICO enterprise.

See Sand, Modern Federal Jury Instructions - Criminal; Form Instruction 52-23.

16

**REQUEST NO. 11**

Count One: Racketeering Enterprise - Unanimity on Racketeering
                              Acts

The indictment charges MR. CHRISTOPHER COLOMBO with
commission of six racketeering acts.  As I just instructed you,
the government must prove beyond a reasonable doubt that at least
two of the racketeering acts recited in the indictment were
committed by MR. CHRISTOPHER COLOMBO from in or about 1994 up
through and including in or about 2001.

You may not find MR. CHRISTOPHER COLOMBO guilty unless you
all agree unanimously that at least two particular racketeering
acts were committed by the defendant.  It is not enough that you
all believe that two racketeering acts were committed.  That is,
you cannot find MR. CHRISTOPHER COLOMBO guilty if some of you
think that only racketeering acts A and B were committed by MR.
CHRISTOPHER COLOMBO and the rest of you think that only acts C
and D were committed by MR. CHRISTOPHER COLOMBO.  There must be
at least two specific racketeering acts that all of you believe
were committed by MR. CHRISTOPHER COLOMBO in order to convict
him.

> See Sand, Modern Federal Jury Instructions -
> Criminal; Form Instruction 52-24.

17

**REQUEST NO. 12**

<u>Count One: Racketeering Enterprise - Fifth Element - Conducting
or Participating in the Enterprise Through the Pattern of
Racketeering Activity</u>

The fifth and final element that the government must prove beyond a reasonable doubt is that MR. CHRISTOPHER COLOMBO conducted or participated in the conduct of the enterprise through that pattern of racketeering activity.

To conduct or participate in the conduct of the enterprise means that MR. CHRISTOPHER COLOMBO must have played some part in the operation or management of the enterprise.  The government is not required to prove that the defendant was a member of upper management.  An enterprise is operated not only by those in upper management, but also by those lower down in the enterprise who act under the direction of upper management.

In addition to proving that MR. CHRISTOPHER COLOMBO played some part in the operation or management of the enterprise, the government must also prove that there is some meaningful connection between MR. CHRISTOPHER COLOMBO's illegal acts and the affairs of the enterprise.  To satisfy this part of the element, the government must establish either (1) that the defendant's position in the enterprise facilitated his commission of those illegal acts and that the racketeering acts had some impact or effect on the enterprise, or (2) that the acts were in some way related to the affairs of the enterprise, or (3) that the

18

defendant was able to commit the acts by virtue of his position

or involvement in the affairs of the enterprise.

See Sand, <u>Modern Federal Jury Instructions -</u>
<u>Criminal</u>; Form Instruction 52-25.

**REQUEST NO. 13**

<u>Count Two: RICO Conspiracy - The Indictment and the Statute</u>

The indictment charges ANTHONY COLOMBO, CHRISTOPHER COLOMBO, JOHN BERLINGIERI and JOSEPH FLACCAVENTO with conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act. This means that MR. CHRISTOPHER COLOMBO has been charged with conspiracy to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity. The indictment reads as follows:

[Read Indictment]

MR. CHRISTOPHER COLOMBO is charged with violating section 1962(d) of Title 18 of the United States Code. That section reads as follows:

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this subsection.

<u>See</u> Sand, <u>Modern Federal Jury Instructions - Criminal</u>; Form Instruction 50-26.

**REQUEST NO. 14**

<u>Count Two: RICO Conspiracy - Elements of the Offense</u>

In order to prove that MR. CHRISTOPHER COLOMBO violated section 1962(d), the government must establish beyond a reasonable doubt each of the following four elements of the offense:

First, that an enterprise existed as alleged in the indictment from in or about 1994 up through and including in or about 2002 in the Southern District of New York and elsewhere;

Second, that the enterprise affected interstate or foreign commerce in the Southern District of New York and elsewhere;

Third, that MR. CHRISTOPHER COLOMBO was associated with or employed by the enterprise;

Fourth, that MR. CHRISTOPHER COLOMBO knowingly and willfully became a member of the conspiracy.

> <u>See</u> Sand, <u>Modern Federal Jury Instructions -
> Criminal</u>; Form Instruction 52-28 <u>citing</u> <u>United States v.
> Tocco</u>, 200 F.2d 401 (6th Cir. 2000); <u>United States v.
> Darden</u>, 70 F.3d 1507 (8th Cir. 1995), <u>cert. denied</u>, 518 U.S.
> 1026 (1996).

**REQUEST NO. 15**

<u>Count Two: RICO Conspiracy - First Element - The Enterprise</u>

The first element that the government must prove beyond a reasonable doubt is that an "enterprise" existed as alleged in the indictment from in or about 1994 up through and including in or about 2002 in the Southern District of New York and elsewhere.

The instruction I gave to you previously regarding the existence of the "enterprise" as alleged in the indictment applies here as well.

<u>See</u> Sand, <u>Modern Federal Jury Instructions - Criminal</u>; Form Instruction 52-29 <u>adapted from</u> <u>United States v. Turkette</u>, 452 U.S. 576 (1981); <u>United States v. Errico</u>, 635 F.2d 152 (2d Cir. 1980) <u>cert. denied</u>, 453 U.S. 911 (1981).

**REQUEST NO. 16**

<u>Count Two: RICO Conspiracy - Second Element - Effect on
Interstate Commerce</u>

The second element the government must prove beyond a
reasonable doubt is that the enterprise was engaged in or had an
effect upon interstate commerce.

The instruction I gave to you previously regarding the
effect of the enterprise on interstate commerce applies here as
well.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 52-30 <u>citing</u> <u>United States v.
Miller</u>, 116 F.3d 641 (2d Cir. 1997), <u>cert. denied</u>, 118 S.
Ct. 2063 (1998).

**REQUEST NO. 17**

<u>Count Two: RICO Conspiracy - Third Element - Association With the
Enterprise</u>

The third element which the government must prove beyond a reasonable doubt is that MR. CHRISTOPHER COLOMBO was associated with or employed by the enterprise.

The instruction which I gave you to previously regarding association with the enterprise applies here as well.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 52-32.

**REQUEST NO. 18**

<u>Count Two: RICO Conspiracy - Fourth Element - Membership in the
Conspiracy</u>

The fourth element the government must prove beyond a
reasonable doubt is that the defendant knowingly and willfully
became a member of the conspiracy.  A conspiracy is a kind of
criminal partnership– a combination or agreement of two or more
persons to join together to accomplish some unlawful purpose.
This means that in order to meet its burden of proof, the
government must show that he agreed to participate, directly or
indirectly, in the affairs of the enterprise through a pattern of
racketeering activity.

The focus of this element is on the defendant's agreement to
participate in the objective of the enterprise to engage in a
pattern or racketeering activity, and not on the defendant's
agreement to commit the individual criminal acts.  The government
must prove that MR. CHRISTOPHER COLOMBO participated in some
manner in the overall objective of the conspiracy, and that the
conspiracy involved, or would have involved, the commission of
two racketeering acts.  The government is not required to prove
either that the defendant agreed to commit two racketeering acts
or that he actually committed two such acts, although you may
conclude that he agreed to participate in the conduct of the
enterprise from proof that he agreed to commit or actually
committed such acts.

For the purposes of this count, the indictment alleges that the following racketeering acts were or were intended to be committed as part of the conspiracy. [Read relevant portion of indictment.] Again, the government must prove that two of these acts were, or were intended to be, committed as part of the conspiracy, although it need not prove that defendant committed or agreed to commit any of these acts as long as the government proves that defendant participated in some manner in the overall objective of the conspiracy.

Adapted from Sand, Modern Federal Jury Instructions - Criminal; Form Instruction 19-2, 52-32, citing Salinas v. United States, 522 U.S. 52 (1997); United States v. Viola, 35 F.3d 37 (2d Cir. 1994).

Count Three: Gambling Conspiracy

ANTHONY COLOMBO, CHRISTOPHER COLOMBO and JOHN BERLINGIERI are charged with conspiracy to violate Title 18 U.S.C. 1084 and 1955, Use of a Wire Communication Facility and Operation of Illegal Gambling Business, federal laws.

A conspiracy is a kind of criminal partnership- a combination or agreement of two or more persons to join together to accomplish some unlawful purpose.

The crime of conspiracy to violate a federal law is an independent offense. It is separate and distinct from the actual violation of any specific federal laws, which the law refers to as "substantive crimes."

Indeed, you may find MR. CHRISTOPHER COLOMBO guilty of the crime of conspiracy to commit an offense against the United States even though the substantive crime which was the object of the conspiracy was not actually committed.

Congress has deemed it appropriate to make conspiracy, standing alone, a separate crime even if the conspiracy is not successful. This is because collective criminal activity poses a greater threat to the public's safety and welfare than individual conduct, and increases the likelihood of success of a particular criminal venture.

Adapted from Sand, Modern Federal Jury Instructions - Criminal; Form Instruction 19-1, 19-2.

**REQUEST NO. 20**

Count Three: Gambling Conspiracy - Elements of Conspiracy

In order to satisfy its burden of proof, the government must establish each of the following four essential elements beyond a reasonable doubt:

First, that two or more persons entered the unlawful agreement charged in the indictment starting in or about 1999 up through and including in or about 2002 in the Southern District of New York and elsewhere;

Second, that MR. CHRISTOPHER COLOMBO knowingly and willfully became a member of the conspiracy;

Third, that one of the members of the conspiracy knowingly committed at least one of the overt acts charged in the indictment; and

Fourth, that the overt act(s) which you find to have been committed was (were) committed to further some objective of the conspiracy.

> See Sand, Modern Federal Jury Instructions - Criminal; Form Instruction 19-3.

Count Three: Gambling Conspiracy - First Element - Existence of Agreement

The first element which the government must prove beyond a reasonable doubt to establish the offense of conspiracy is that two or more persons entered the unlawful agreement charged in the indictment.

In order for the government to satisfy this element, you need not find that the alleged members of the conspiracy met together and entered into any express or formal agreement. Similarly, you need not find that the alleged conspirators states, in words or writing, what the scheme was, its object or purpose, or every precise detail of the scheme or the means by which its object or purpose was to be accomplished. What the government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more people to cooperate with each other to accomplish an unlawful act.

You may, of course, find that the existence of an agreement to disobey or disregard the law has been established by direct proof. However, since conspiracy is, by its very nature, characterized by secrecy, you may also infer its existence from the circumstances of this case and the conduct of the parties involved.

In a very real sense, then, in the context of conspiracy cases, actions often speak louder than words. In this regard,

you may, in determining whether an agreement existed here,

consider the actions and statements of all of those you find to

be participants as proof that a common design existed on the part

of the persons charged to act together to accomplish an unlawful

purpose.

> See Sand, Modern Federal Jury Instructions -
> Criminal; Form Instruction 19-4.

Count Three: Gambling Conspiracy - Second Element - Membership in the Conspiracy

The second element which the government must prove beyond a reasonable doubt to establish the offense of conspiracy is that the defendant knowingly, willfully and voluntarily became a member of the conspiracy.

If you are satisfied that the conspiracy charged in the indictment existed, you must next ask yourselves who the members of that conspiracy were. In deciding whether he was, in fact, a member of the conspiracy, you should consider whether MR. CHRISTOPHER COLOMBO knowingly and willfully joined the conspiracy. Did he participate in it with knowledge of its unlawful purpose and with the specific intention of furthering its business or objective as an associate or worker?

In that regard, it has been said that in order for a defendant to be deemed a participant in a conspiracy, he must have had a stake in the venture or its outcome. You are instructed that, while proof of a financial interest in the outcome of a scheme is not essential, if you find that MR. CHRISTOPHER COLOMBO had such an interest, that is a factor which you may properly consider in determining whether or not MR. CHRISTOPHER COLOMBO was a member of the conspiracy charged in the indictment.

As I mentioned a moment ago, before MR. CHRISTOPHER COLOMBO can be found to have been a conspirator, you must first find that he knowingly joined in the unlawful agreement or plan. The key question, therefore, is whether MR. CHRISTOPHER COLOMBO joined the conspiracy with an awareness of at least some of the basic aims and purposes of the unlawful agreement.

It is important for you to note that MR. CHRISTOPHER COLOMBO's participation in the conspiracy must be established by independent evidence of his own acts or statements, as well as those of the other alleged co-conspirators, and the reasonable inferences which may be drawn from them.

MR. CHRISTOPHER COLOMBO's knowledge is a matter of inference from the facts proved. In that connection, I instruct you that to become a member of the conspiracy, the defendant need not have known the identities of each and every other member, nor need he have been apprised of all of their activities. Moreover, the defendant need not have been fully informed as to all of the details, or the scope of the conspiracy in order to justify an inference of knowledge on his part. Furthermore, the defendant need not have joined in all of the conspiracy's unlawful objectives.

The extent of a defendant's participation has no bearing on the issue of a defendant's guilt. A conspirator's liability is not measured by the extent or duration of his participation. Indeed, each member may perform separate and distinct acts and

may perform them at different times.  Some conspirators play major roles, while others play minor parts in the scheme.  An equal role is not what the law requires.  In fact, even a single act may be sufficient to draw the defendant within the ambit of the conspiracy.

I want to caution you, however, that MR. CHRISTOPHER COLOMBO's mere presence at the scene of the alleged crime does not, by itself, make him a member of the conspiracy.  Similarly, mere association with one or more members of the conspiracy does not automatically make MR. CHRISTOPHER COLOMBO a member.  A person may know, be related to, or be friendly with, a criminal, without being a criminal himself.  Mere similarity of conduct or the fact that they may have assembled together and discussed common aims and interests does not necessarily establish membership in the conspiracy.

I also want to caution you that mere knowledge or acquiescence, without participation, in the unlawful plan is not sufficient.  Moreover, the fact that the acts of a defendant, without knowledge, merely happen to further the purposes or objectives of the conspiracy, does not make MR. CHRISTOPHER COLOMBO a member.  More is required under the law.  What is necessary is that MR. CHRISTOPHER COLOMBO must have participated with knowledge or at least some of the purposes or objectives of the conspiracy and with the intention of aiding in the accomplishment of those unlawful ends.

In sum, MR. CHRISTOPHER COLOMBO, with an understanding of the unlawful character of the conspiracy, must have intentionally engaged, advised or assisted in it for the purpose of furthering the illegal undertaking.  He thereby becomes a knowing and willing  participant in the unlawful agreement- that is to say, a conspirator.

Adapted from Sand, Modern Federal Jury Instructions - Criminal; Form Instruction 19-6.

**REQUEST NO. 23**

<u>Count Three: Gambling Conspiracy - Third Element - Commission of Overt Act</u>

The third element which the government must prove beyond a reasonable doubt, to establish the offense of conspiracy, is that at least one of the overt acts charged in the indictment was knowingly committed by at least one of the conspirators, at or about the time and place alleged.

The indictment charges that the following overt acts were committed in the Southern District. [Read overt acts.]

In order for the government to satisfy this element, it is not required that all of the overt acts alleged in the indictment be proven.

Similarly, you need not find that the defendant in this case committed the overt act. It is sufficient for the government to show that one of the conspirators knowingly committed an overt act in furtherance of the conspiracy, since such an act becomes, in the eyes of the law, the act of all of the members of the conspiracy.

You are further instructed that the overt act need not have been committed at precisely the time alleged in the indictment. It is sufficient if you are convinced beyond a reasonable doubt, that if occurred at or about the time and place stated.

Finally, you must find that either the agreement was formed or that an overt act was committed in the Southern District, which includes the Bronx and Manhattan, New York.

> See Sand, <u>Modern Federal Jury Instructions -
> Criminal</u>; Form Instruction 19-7.

Count Three: Gambling Conspiracy - Fourth Element - Commission of Overt Act in Furtherance of the Conspiracy

The fourth, and final, element which the government must prove beyond a reasonable doubt is that the overt act was committed for the purpose of carrying out the unlawful agreement. In order for the government to satisfy this element, it must prove, beyond a reasonable doubt, that at least one overt act was knowingly and willfully done, by at least one conspirator, in furtherance of some object or purpose of the conspiracy, as charged in the indictment. In this regard, you should bear in mind that the overt act, standing alone, may be an innocent, lawful act. Frequently, however, an apparently innocent act sheds its harmless character if it is a step in carrying out, promoting, aiding or assisting the conspiratorial scheme. You are therefore instructed that the overt act does not have to be an act which, in and of itself is criminal or constitutes an objective of the conspiracy.

See Sand, Modern Federal Jury Instructions - Criminal; Form Instruction 19-8.

Count Three: Gambling Conspiracy - Acts and Declarations of Co-Conspirators

You will recall that I have admitted into evidence against the defendants the acts and statements of others because these acts and statements were committed by persons who, the government charges, were also confederates or co-conspirators of the defendants on trial.

The reason for allowing this evidence to be received against the defendants has to do with the nature of the crime of conspiracy. A conspiracy is often referred to as a partnership in crime. Thus, as in other types of partnerships, when people enter into a conspiracy to accomplish an unlawful end, each and every member becomes an agent for the other conspirators in carrying out the conspiracy.

Accordingly, the reasonably foreseeable acts, declarations, statements and omissions of any member of the conspiracy and in furtherance of the common purpose of the conspiracy, are deemed, under the law, to be the acts of all the members, and all of the members are responsible for such acts, declarations, statements and omissions.

If you find, beyond a reasonable doubt, that MR. CHRISTOPHER COLOMBO was a member of the conspiracy charged in the indictment, then any acts done or statements made in furtherance of the conspiracy by any persons also found by you to have been members

of that conspiracy, may be considered against that defendant. This is so even if such acts were done and statements were made in MR. CHRISTOPHER COLOMBO's absence and without his knowledge.

However, before you may consider the statements or acts of a co-conspirator in deciding the issue of a defendant's guilt, you must first determine that the acts and statements were made during the existence, and in furtherance, of the unlawful scheme. If the acts were done or the statements made by someone whom you do not find to have been a member of the conspiracy or if they were not done or said in furtherance of the conspiracy, they may be considered by you as evidence only against the member who did or said them.

See Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 19-9.

## REQUEST NO. 26

Count Four: Operation of Illegal Gambling Business - The
Indictment and the Statute

ANTHONY COLOMBO, CHRISTOPHER COLOMBO and JOHN BERLINGIERI
are charged with conducting an illegal gambling business.  The
indictment reads:

[Read Indictment]

The relevant statute on this subject is section 1955 of
Title 18 of the United States Code, which defines an illegal
gambling business as:

a gambling business which

(i) is a violation of the law of a State or political
subdivision in which it is conducted;

(ii) involved five or more persons who conduct,
finance, manage, supervise, direct, or own all or part
of such business and

(iii) has been or remains in substantially continuous
operation for a period in excess of thirty days or has
a gross revenue of $2,000 in any single day.

The statute then provides:

Whoever conducts, finances, manages, supervises, directs, or
owns all or part of an illegal gambling business shall be [guilty
of a crime].

See Sand, Modern Federal Jury Instructions -
Criminal; Form Instruction 39-22.

40

**REQUEST NO. 27**

<u>Count Four: Operation of Illegal Gambling Business - Elements of the Offense</u>

In order to prove that MR. CHRISTOPHER COLOMBO conducted an illegal gambling business, the government must prove beyond a reasonable doubt each of the following three elements of the crime:

First, that the gambling business charged in the indictment from in or about 1999 up through and including in or about 2002, in the Southern District of New York and elsewhere, violated the laws of the state of New York;

Second that the gambling business was in substantially continuous operation for a period in excess of thirty days or had gross revenues or $2,000 or more in any one day; and

Third, that five or more persons, including MR. CHRISTOPHER COLOMBO, knowingly conducted, financed, managed, supervised, directed, or owned the gambling business.

<u>See</u> Sand, <u>Modern Federal Jury Instructions - Criminal</u>; Form Instruction 39-23.

Count Four: Operation of Illegal Gambling Business – First
Element – Gambling Business Was Illegal Under State Law

This first element the government must prove beyond a
reasonable doubt is that the gambling business charged in the
indictment from in or about 1999 up through and including in or
about 2002 in the Southern District of New York and elsewhere,
violated the laws of the state of New York.

The indictment charges that the gambling business in
question is a sports betting operation in violation of New York
State law.  To prove this element the government must prove that
the business violated New York Penal Law §§ 225.05, 225.10,
225.15, 225.20.  My previous instructions as to the elements of
these state offenses are also applicable here.

The government is not required to prove that MR.
CHRISTOPHER COLOMBO performed any act of gambling prohibited by
New York law.  It is only required to prove that the business
violated New York law.

Adapted from Sand, Modern Federal Jury Instructions -
Criminal; Form Instruction 39-24, citing United States v.
Sanabria, 437 U.S. 54 (1978).

Count Four: Operation of Illegal Gambling Business - Second
Element - Substantially Continuous Operation

The second element the government must prove beyond a reasonable doubt is that the gambling business was in substantially continuous operation for a period in excess of thirty days at some time from in or about 1999 up through and including in or about 2002.

To establish this element, the government is not required to prove that the business operated on an everyday basis throughout the entire period.  Instead, the government must prove that over some period in excess of thirty days, the gambling business was conducted with sufficient regularity that it existed as an ongoing business rather than as a casual non-business activity. The government is not required to prove that MR. CHRISTOPHER COLOMBO knew that the business was in substantially continuous operation.

It is for you to determine the specific period when the business was in substantially continuous operation.  If that period was thirty days or less, then you should acquit MR. CHRISTOPHER COLOMBO.  If it was longer than thirty days, then you should go on to the next element.

In the alternative, the Government must prove beyond a reasonable doubt is that the gambling business had gross revenues of $2,000 or more in any one day.

For the purposes of this element, gross revenues means the total amount wagered in one day regardless of how much was paid out to bettors as winnings.  The government is not required to prove that MR. CHRISTOPHER COLOMBO knew that the business had gross revenues of $2,000 or more in any one day.

Adapted from Sand, Modern Federal Jury Instructions - Criminal; Form Instructions 39-25, 39-26.

<u>Count Four: Operation of Illegal Gambling Business - Third
Element - Five or More Persons Conducted Gambling Business</u>

The third element the government must prove beyond a
reasonable doubt is that five or more persons, including MR.
CHRISTOPHER COLOMBO, knowingly conducted, financed, managed,
supervised, directed, or owned the gambling business during the
period when you found it was in substantially continuous
operation.

The terms "financed," "managed," "supervised," "directed"
and "owned" should be given their everyday meanings.  However, I
would like to explain the term "conducted" in more detail.

To conduct a gambling business means to perform any act,
function or duty which is necessary or helpful in the regular
operation of the business.  You may find that a person conducted
the gambling business even though he or she was a low-level
employee having no part in the management or control of the
business and no share in its profits.  This includes any employee
who was directly involved in gambling activity, like dealers and
shufflers, or anyone who knowingly assisted in the operation of
the gambling business, like waitresses and security guards.
However, someone whose only involvement with the business was as
a customer or bettor is not conducting the business and cannot be
counted as one of the five.

Five or more people, including MR. CHRISTOPHER COLOMBO, must have participated during the period you found that the gambling business was in substantially continuous operation.  The government does not have to prove that all five were engaged at any particular time in conducting the business, as long as it proves that all five participated in the business during the period you identified.

Each of the five persons must have knowingly participated in the business.  This means that they knew that they were involved in conducting a gambling business, and were not involved by accident, negligence or mistake.  The government does not have to prove that defendant knew that the gambling business was illegal.

See Sand, Modern Federal Jury Instructions - Criminal; Form Instruction 39-27.

**REQUEST NO. 31**

<u>Counts Five and Six: Transmission of Wagering Information - The Indictment and the Statute</u>

ANTHONY COLOMBO, CHRISTOPHER COLOMBO and JOHN BERLINGIERI are charged with engaging in the business of gambling and placing bets by the use of interstate wires. The indictment reads:

[Read Indictment]

The relevant statute on this subject is 18 U.S.C. § 1084(a), which provides:

Whoever being engaged in the business of betting or wagering knowingly uses a wire communication facility for the transmission in interstate or foreign commerce of bets or wagers or information assisting in the placing of bets or wagers on any sporting event or context [shall be guilty of a crime].

<u>See</u> Sand, <u>Modern Federal Jury Instructions - Criminal</u>; Form Instruction 39-8.

**REQUEST NO. 32**

<u>Counts Five and Six: Transmission of Wagering Information -
Elements of the Offense</u>

To prove the charge of transmission of wagering information, the government must establish each of the following elements beyond a reasonable doubt:

First, that MR. CHRISTOPHER COLOMBO was engaged in the business of betting and wagering, from in or about 1999 through in or about 2002;

Second, that MR. CHRISTOPHER COLOMBO, as part of this business, used or caused to be used a wire communication facility to transmit in interstate commerce bets or wagers or information which assisted in the placing of bets or wagers on any sporting event or contest;

Third, that the transmission was made between the Southern District of New York and elsewhere using a telephone line; and

Fourth, that MR. CHRISTOPHER COLOMBO acted knowingly.

<u>Adapted from</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 39-9.

**REQUEST NO. 33**

<u>Counts Five and Six: Transmission of Wagering Information - First
Element - Defendant Engaged in Gambling Business</u>

The first element the government must prove beyond a
reasonable doubt is that MR. CHRISTOPHER COLOMBO was engaged in
the business of betting or wagering from in or about 1999 up
through and including in or about 2002.

In order to satisfy this element, the government need not
establish that making bets or wagers was MR. CHRISTOPHER
COLOMBO's exclusive or even primary source of income.  There is
no fixed number of bets or dollar volume of bets which would make
it a "business of betting or wagering."  It is sufficient to
satisfy this element if the government establishes that MR.
CHRISTOPHER COLOMBO participated in a regular course of conduct
or series of transactions which involved time, attention and
labor devoted to betting or wagering for profit.

IF you find that MR. CHRISTOPHER COLOMBO was engaged in
merely casual, isolated or sporadic transactions, or if you have
a reasonable doubt as to whether he engaged in the business of
betting or wagering, then it is your duty to find MR. CHRISTOPHER
COLOMBO not guilty.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 39-10.

**REQUEST NO. 34**

<u>Counts Five and Six: Transmission of Wagering Information -
Second Element - Use of a Wire Communication to Transmit Wagering
Information</u>

The second element the government must prove beyond a reasonable doubt is that MR. CHRISTOPHER COLOMBO used or caused to be used a wire communication facility to transmit bets or wagers, or information which assisted in the placing of bets or wagers from in or about 1999 up through and including in or about 2002.

A wire communication facility would include long distance telephone facilities, so information conveyed by telephone from one state into another state would satisfy this element.

It is not necessary for the government to prove that MR. CHRISTOPHER COLOMBO personally used the interstate facility. It is sufficient to satisfy this element if he caused it to be used.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 39-11.

**REQUEST NO. 35**

<u>Counts Five and Six: Transmission of Wagering Information - Third Element - Interstate Facility</u>

The third element the government must prove beyond a reasonable doubt is that the wire transmission was made in interstate commerce.

To establish this element, the government must prove that the transmission passed between two or more states as, for example, a telephone call between New York and New Jersey; or between the United States and a foreign country.

<u>See</u> Sand, <u>Modern Federal Jury Instructions - Criminal</u>; Form Instruction 39-12.

**REQUEST NO. 36**

<u>Counts Five and Six: Transmission of Wagering Information -
Fourth Element - Defendant Acted Knowingly</u>

The final element the government must prove beyond a reasonable doubt is that the defendant acted knowingly.

An act is done knowingly if it is done purposely and intentionally, as opposed to inadvertently or mistakenly.

In order to satisfy this element, the government must prove that MR. CHRISTOPHER COLOMBO knew that an interstate wire communication was being used.

However, it is not necessary for the government to prove that MR. CHRISTOPHER COLOMBO knew that he was breaking any particular law.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 39-13.

Count Seven: Use of Interstate Facility in Aid of Racketeering - The Indictment and the Statute

The indictment charges ANTHONY COLOMBO, CHRISTOPHER COLOMBO and JOHN BERLINGIERI with violating section 1952 of Title 18 of the United States Code, a law known as the Travel Act. The indictment reads as follows:

[Read Indictment]

The Travel Act makes it a federal crime for anyone to travel in interstate commerce for the purpose of carrying on certain unlawful activities. The law provides:

Whoever travels in interstate or foreign commerce or who uses the mail or any facility in interstate or foreign commerce, with intent to–

(1) distribute the proceeds of any unlawful activity; or

(2) commit any crime of violence to further any unlawful activity; or

(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of any unlawful activity,

and thereafter performs or attempts to perform [any of these acts is guilty of a crime].

See Sand, Modern Federal Jury Instructions - Criminal; Form Instruction 60-1.

**REQUEST NO. 38**

<u>Count Seven: Use of Interstate Facility In Aid of Racketeering -
Elements of the Offense</u>

In order to prove that MR. CHRISTOPHER COLOMBO violated the Travel Act, the government must establish beyond a reasonable doubt each of the following elements of the offense.

First, that MR. CHRISTOPHER COLOMBO used or caused someone else to use an interstate facility in or about 1999 up through and including in or about 2002;

Second, that this use of an interstate facility was done with the intent to promote, manage, establish or carry on (*or* to distribute the proceeds of *or* to commit a violent crime in furtherance of) an unlawful activity;

Third, that after this use of an interstate facility, MR. CHRISTOPHER COLOMBO performed or attempted to perform an act in furtherance of (*or* distributed the proceeds of) this same unlawful activity.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 60-2.

**REQUEST NO. 39**

<u>Count Seven: Use of an Interstate Facility in Aid of Racketeering
– First Element – Use of an Interstate Facility</u>

The first element the government must prove beyond a
reasonable doubt is that MR. CHRISTOPHER COLOMBO used or caused
someone else to use an interstate facility, specifically
telephone lines assigned phone numbers (212) 427-5258 and (212)
369-3638, from in or about 1999, up through and including 2002.

An interstate facility is any vehicle or instrument that
crosses state lines in the course of commerce. For example, a
freight carrier that carries items from one state to another is
an interstate facility. Making a telephone call from one state
to another is also the use of an interstate facility. Any use of
the mails constitutes the use of an interstate facility whether
or not the mailed item crossed a state line.

MR. CHRISTOPHER COLOMBO has been charged with [read
allegations from the indictment pertaining to the interstate
element]. If the government has proved these facts beyond a
reasonable doubt, then you may find that it has proved the first
element of the Travel Act charge against MR. CHRISTOPHER COLOMBO.

In order to meet its burden of proof on this element,
it is not necessary for the government to prove that MR.
CHRISTOPHER COLOMBO himself used an interstate facility. The
Travel Act also applies to a person who causes another person to
use an interstate facility. Therefore, if the government has

55

proven beyond a reasonable doubt that MR. CHRISTOPHER COLOMBO caused another person to use an interstate facility, then you may find that the government has proven the first element of the offense.

> See Sand, Modern Federal Jury Instructions - Criminal; Form Instructions 60-3, 60-4.

**REQUEST NO. 40**

<u>Count Seven: Use of Interstate Facility in Aid of Racketeering -
Second Element - Intent to Engage in Unlawful Activity</u>

The second element that the government must prove beyond a
reasonable doubt is that MR. CHRISTOPHER COLOMBO's use of an
interstate facility was done with the intent to promote, manage,
establish or carry on an unlawful activity, specifically a sports
betting operation.

It is not enough for the government to prove only that MR.
CHRISTOPHER COLOMBO used an interstate facility.  The government
must also prove beyond a reasonable doubt that MR. CHRISTOPHER
COLOMBO used the interstate facility for the purpose of
facilitating the sports betting operation.

The government does not have to prove that the furtherance
of the unlawful activity was the defendant's sole purpose for
using an interstate facility.  It is sufficient if the government
proves that one of the defendant's reasons for using the
interstate facility was to further the unlawful activity.  Thus,
if you find that the defendant used interstate facilities with
the intent to facilitate the unlawful activity, and you also find
that the defendant undertook this same use of interstate
facilities for other reasons that have nothing to do with the
unlawful activity, you may still find that the government has met
its burden of proof on the second element of the offense.

You are thus being asked to look into MR. CHRISTOPHER COLOMBO's mind and ask what was MR. CHRISTOPHER COLOMBO's purpose in using interstate facilities.  You may determine MR. CHRISTOPHER COLOMBO's intent from all the evidence that has been placed before you, including the statements of the defendant and his conduct before and after the use of the facilities.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -</u>
<u>Criminal</u>; Form Instruction 60-7.

**REQUEST NO. 41**

<u>Count Seven: Use of Interstate Facility in Aid of Racketeering -
Third Element - The Required Knowledge</u>

The government must prove that MR. CHRISTOPHER COLOMBO used
an interstate facility with the intent to facilitate any activity
which MR. CHRISTOPHER COLOMBO knew was illegal.  The government
does not have to prove that MR. CHRISTOPHER COLOMBO knew his use
of facilities was illegal.  However, the government must prove
beyond a reasonable doubt that MR. CHRISTOPHER COLOMBO knew that
the activity he intended to facilitate was illegal.  Thus, if MR.
CHRISTOPHER COLOMBO used interstate facilities intending to
facilitate a business deal, but he did not know that the deal was
illegal or involved unlawful activity, you must find MR.
CHRISTOPHER COLOMBO not guilty.

> <u>See</u> Sand, <u>Modern Federal Jury Instructions -
> Criminal</u>; Form Instruction 60-9.

**REQUEST NO. 42**

<u>Count Seven: Use of Interstate Facility in Aid of Racketeering -
State Crime is an Element of the Offense</u>

MR. CHRISTOPHER COLOMBO has been charged with using an interstate facility to facilitate the operation of an illegal gambling business.  The government must prove to you beyond a reasonable doubt that the activities MR. CHRISTOPHER COLOMBO intended to facilitate were, in fact, unlawful under the New York Penal Law.  In order to prove this, the government must prove beyond a reasonable doubt that MR. CHRISTOPHER COLOMBO performed or attempted to perform an act in furtherance of the illegal gambling business with the intent that each element of the offenses of promoting gambling and possession of gambling records under New York law be completed.  My previous instructions as to the elements of New York Penal Law §§ 225.05, 225.10, 225.15 and 225.20 apply here as well.

<u>Adapted from</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 60-10.

**REQUEST NO. 43**

<u>Count Seven: Use of Interstate Facility in Aid of Racketeering -
Business Enterprise Requirement for Prosecutions Involving
Gambling</u>

The government must prove beyond a reasonable doubt that the
unlawful activity that MR. CHRISTOPHER COLOMBO used an interstate
facility to facilitate was a business enterprise.  That is, the
government must prove that the unlawful activity was part of a
continuous course of criminal conduct, and not simply an isolated
criminal incident.  If you find that the unlawful activity was an
isolated incident, and was not part of an ongoing course of
criminal conduct, you must find MR. CHRISTOPHER COLOMBO not
guilty.

However, to prove that the unlawful activity was a business
enterprise, the government does not have to show that the alleged
illegal activity was engaged in for a particular length of time.
Nor must the government prove that such activity was defendant's
primary pursuit or occupation, or that it actually turned a
profit.  What the government must prove beyond a reasonable doubt
is that MR. CHRISTOPHER COLOMBO engaged in a continuous course of
criminal conduct for the purpose of profit, rather than casual,
sporadic or isolated criminal activity.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 60-11.

**REQUEST NO. 44**

<u>Count Seven: Use of Interstate Facility in Aid of Racketeering -
Third Element - Subsequent Act in Furtherance of the Unlawful
Activity</u>

The third element that the government must prove beyond a
reasonable doubt, is that MR. CHRISTOPHER COLOMBO's use of an
interstate facility was followed by his performance or attempted
performance of an act in furtherance of the unlawful activity.
This act need not itself be unlawful.  However, this act must
come after the use of an interstate facility.  Any act that
happened before the use of a facility cannot satisfy this
element.

> <u>See</u> Sand, <u>Modern Federal Jury Instructions -
> Criminal</u>; Form Instruction 60-12.

## REQUEST NO. 45

Count Eight: Conspiracy to Make Extortionate Extensions of Credit

ANTHONY COLOMBO, CHRISTOPHER COLOMBO, JOHN BERLINGIERI,
JOSEPH FLACCAVENTO and NUNZIO FLACCAVENTO are charged with
conspiracy to make extortionate extensions of credit in violation
of 18 U.S.C. § 892, Making Extortionate Extensions of Credit, a
federal law.

My previous instructions as to the nature of a conspiracy
apply to this count as well.

> See Sand, Modern Federal Jury Instructions -
> Criminal; Form Instruction 19-1, 19-2, citing Callanan v.
> United States, 364 U.S. 587 (1961); Pereira v. United
> States, 347 U.S. 1 (1954).

**REQUEST NO. 46**

Count Eight: Conspiracy to Make Extortionate Extensions of Credit
- Elements of Conspiracy

In order to satisfy its burden of proof, the government must establish each of the following four essential elements beyond a reasonable doubt:

First, that two or more persons entered the unlawful agreement charged in the indictment starting in or about 1994 up through and including in or about 2001;

Second, that MR. CHRISTOPHER COLOMBO knowingly and willfully became a member of the conspiracy;

Third, that one of the members of the conspiracy knowingly committed at least one of the overt acts charged in the indictment; and

Fourth, that the overt act(s) which you find to have been committed was (were) committed to further some objective of the conspiracy.

> See Sand, Modern Federal Jury Instructions -
> Criminal; Form Instruction 19-3, citing, Ingram v. United
> States, 360 U.S. 672 (1959); United States v. Marchese, 438
> F.2d 452 (2d Cir.) (per curiam), cert. denied, 402 U.S. 1012
> (1971).

**REQUEST NO. 47**

<u>Count Eight: Conspiracy to Make Extortionate Extensions of Credit</u>
<u>First Element - Existence of Agreement</u>

My previous instruction as to the existence of the agreement

where conspiracy is charged apply here as well.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -</u>
<u>Criminal</u>; Form Instruction 19-4.

**REQUEST NO. 48**

<u>Count Eight: Conspiracy to Make Extortionate Extensions of Credit</u>
<u>Second Element - Membership in the Conspiracy</u>

My previous instruction regarding a defendant's membership

in a charged conspiracy also applies here.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -</u>
<u>Criminal</u>; Form Instruction 19-6.

**REQUEST NO. 49**

<u>Count Eight: Conspiracy to Make Extortionate Extensions of Credit
Third Element - Commission of Overt Act</u>

The third element which the government must prove beyond a reasonable doubt, to establish the offense of conspiracy, is that at least one of the overt acts charged in the indictment was knowingly committed by at least one of the conspirators, in or about 1994 up through and including in or about 2001. The indictment charges that the following overt acts were committed in the Southern District. [Read overt acts.]

My previous instruction about proof of overt acts also applies here.

> <u>See</u> Sand, <u>Modern Federal Jury Instructions -
> Criminal</u>; Form Instruction 19-7.

**REQUEST NO. 50**

Count Eight: Conspiracy to Make Extortionate Extensions of Credit
Fourth Element - Commission of Overt Act in Furtherance of the
Conspiracy

The fourth, and final, element which the government must prove beyond a reasonable doubt is that the overt act was committed for the purpose of carrying out the unlawful agreement. My previous instruction as to proof of this element of a conspiracy charge also applies here.

See Sand, Modern Federal Jury Instructions - Criminal; Form Instruction 19-8.

**REQUEST NO. 51**

<u>Count Nine: Conspiracy to Collect Extensions of Credit by
Extortionate Means</u>

ANTHONY COLOMBO, CHRISTOPHER COLOMBO, JOHN BERLINGIERI,

JOSEPH FLACCAVENTO and NUNZIO FLACCAVENTO are charged with

conspiracy to collect extensions of credit by extortionate means

in violation of 18 U.S.C. § 894, a federal law.

My previous instruction to you regarding the nature of a

conspiracy is applicable to this count as well.

<u>Adapted from</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 19-1, 19-2, <u>citing</u> <u>Callanan v.
United States</u>, 364 U.S. 587 (1961); <u>Pereira v. United
States</u>, 347 U.S. 1 (1954).

**REQUEST NO. 52**

<u>Count Nine: Conspiracy to Collect Extensions of Credit by
Extortionate Means - Elements of Conspiracy</u>

In order to satisfy its burden of proof, the government must establish each of the following four essential elements beyond a reasonable doubt:

First, that two or more persons entered the unlawful agreement charged in the indictment starting in or about 1994 up through and including in or about 2001 in the Southern District of New York and elsewhere;

Second, that MR. CHRISTOPHER COLOMBO knowingly and willfully became a member of the conspiracy;

Third, that one of the members of the conspiracy knowingly committed at least one of the overt acts charged in the indictment; and

Fourth, that the overt act(s) which you find to have been committed was (were) committed to further some objective of the conspiracy.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 19-3, <u>citing</u>, <u>Ingram v. United
States</u>, 360 U.S. 672 (1959); <u>United States v. Marchese</u>, 438
F.2d 452 (2d Cir.) (per curiam), <u>cert. denied</u>, 402 U.S. 1012
(1971).

**REQUEST NO. 53**

<u>Count Nine: Conspiracy to Collect Extensions of Credit by
Extortionate Means - First Element - Existence of Agreement</u>

The first element which the government must prove beyond a
reasonable doubt to establish the offense of conspiracy is that
two or more persons entered the unlawful agreement charged in the
indictment from in or about 1994 up through and including in or
about 2001.

My previous instruction regarding the existence of the
agreement in a charged conspiracy also applies here.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 19-4.

**REQUEST NO. 54**

<u>Count Nine: Conspiracy to Collect Extensions of Credit by
Extortionate Means - Second Element - Membership in the
Conspiracy</u>

The second element which the government must prove beyond a
reasonable doubt to establish the offense of conspiracy is that
the defendant knowingly, willfully and voluntarily became a
member of the conspiracy from in or about 1994 up through and
including in or about 2001.

My previous instruction as to membership in a charged
conspiracy also applies here.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 19-6.

**REQUEST NO. 55**

<u>Count Nine: Conspiracy to Collect Extensions of Credit by
Extortionate Means - Third Element - Commission of Overt Act</u>

The third element which the government must prove beyond a
reasonable doubt, to establish the offense of conspiracy, is that
at least one of the overt acts charged in the indictment was
knowingly committed by at least one of the conspirators, from in
or about 1994, up through and including in or about 2001, in the
Southern District of New York and elsewhere.

The indictment charges that the following overt acts were
committed in the Southern District. [Read overt acts.]

My previous instruction as to proof of overt acts also
applies here.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 19-7.

**REQUEST NO. 56**

<u>Count Nine: Conspiracy to Collect Extensions of Credit by
Extortionate Means - Fourth Element - Commission of Overt Act in
Furtherance of the Conspiracy</u>

My previous instruction as to the commission of an overt act

in furtherance of a conspiracy also applies here.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 19-8.

**REQUEST NO. 57**

<u>Count Ten: Making Extortionate Extensions of Credit - The
Indictment and the Statute</u>

The indictment charges CHRISTOPHER COLOMBO and JOSEPH

FLACCAVENTO with making extortionate extensions of credit.  It

reads in pertinent part:

[Read Indictment]

Section 892 of Title 18 of the United States Code provides

in pertinent part that:

Whoever makes any extortionate extension of credit or

conspires to do so . . . [commits a crime].

The statute further provides that:

In any prosecution under this section, if it is shown that

all of the following factors were present [then you may infer]

that the extension of credit was extortionate. . . .

1) The repayment of the extension of credit . . . would be

unenforceable through civil judicial processes against the

debtor . . . at the time the extension of credit was made.

2) The extension of credit was made at a rate of interest in

excess of an annual rate of 45 per centum. . . .

3) At the time the extension of credit was made the debtor

reasonably believed that either one or more extensions of

credit by the creditor had been collected . . . by

extortionate means [or that] the creditor had a reputation

for the use of extortionate means to collect extensions of credit.

4) . . . the total of the extensions of credit . . . then outstanding . . . exceeded $100.

<u>Adapted from</u> Sand, <u>Modern Federal Jury Instructions - Criminal</u>; Form Instruction 32-1.

<u>Count Ten: Making Extortionate Extensions of Credit - Elements of
the Offense</u>

In order to prove the charge that MR. CHRISTOPHER COLOMBO made extortionate extensions of credit the government must establish each of the following three elements beyond a reasonable doubt:

First, that MR. CHRISTOPHER COLOMBO made an extension of credit in or about 1994 up through and including in or about 2001 to individuals referred to in the indictment as "Victim-1" and "Victim-2" in the Southern District of New York and elsewhere.

Second, that there was an understanding between MR. CHRISTOPHER COLOMBO and "Victim-1," and between MR. CHRISTOPHER COLOMBO and "Victim-2," express or implied, tacit or otherwise, that if "Victim-1" delayed in making his repayments or if "Victim-2" delayed in making his repayments, or if there was a total failure to repay, violence or other criminal means would be used to force repayment.

Third, that in doing so MR. CHRISTOPHER COLOMBO acted knowingly, willfully, and unlawfully.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 32-2.

**REQUEST NO. 59**

<u>Count Ten: Making Extortionate Extensions of Credit - First
Element - Extending Credit</u>

The first element which the government must demonstrate
beyond a reasonable doubt is that MR. CHRISTOPHER COLOMBO made an
extension of credit in or about 1994 up through and including in
or about 2001 to individuals referred to in the indictment as
"Victim-1" and "Victim-2" in the Southern District of New York
and elsewhere.

To extend credit means to make or renew any loan, or to
enter into any agreement, tacit or express, whereby the repayment
of a debt or the satisfaction of a claim may or will be deferred.
It makes no difference whether the debt or claim in question is
valid or acknowledged, or how it may have arisen.  It further
does not matter if the credit was not in fact extended, for the
statute is violated if there was a mere agreement to make an
extortionate extension of credit.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 32-3, <u>citing</u> <u>United States v.
Palmieri</u>, 456 F.2d 9 (2d Cir. 1972), <u>cert. denied</u>, 406 U.S.
945 (1973).

**REQUEST NO. 60**

<u>Count Ten: Making Extortionate Extensions of Credit - Second
Element - Possibility of Violence</u>

To satisfy the second element of the offense, the
government must prove beyond a reasonable doubt that it was the
understanding of MR. CHRISTOPHER COLOMBO and "Victim-1," and MR.
CHRISTOPHER COLOMBO and "Victim-2," at the time of the extension
of credit, that delay or failure to make repayment could result
in the use of violence or other criminal means to cause harm to
the person, or to the reputation or property of some person.

In this context, the word "understanding" means merely
comprehension or awareness.  It must be emphasized that it is the
awareness of the parties at the time of the loan which is
crucial.  The actual fear of the borrower is not relevant to this
determination, nor does the statute require proof of express
threats.  What is required is that the threat of violence exist
and that it be comprehended by the victim.  If so, the
extortionate nature of the transaction is present.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 32-4.

Count Eleven: Collection of Extensions of Credit by Extortionate
                Means - The Indictment and the Statute

The indictment charges CHRISTOPHER COLOMBO and JOSEPH

FLACCAVENTO with collecting extensions of credit by extortionate

means.  It reads in pertinent part:

[Read Indictment]

Section 894 of Title 18 of the United States Code provides

in pertinent part that:

Whoever knowingly participates in any way, or conspires to

do so, in the use of any extortionate means (1) to collect or

attempt to collect any extension of credit, or (2) to punish any

person for the nonrepayment thereof [commits a crime].

See Sand, Modern Federal Jury Instructions -
Criminal; Form Instruction 32-5.

**REQUEST NO. 62**

<u>Count Eleven: Extensions of Credit by Extortionate Means -
Elements of the Offense</u>

In order to prove the charge that MR. CHRISTOPHER COLOMBO violated section 894, the government must establish each of the following elements beyond a reasonable doubt:

First, that MR. CHRISTOPHER COLOMBO collected or attempted to collect an extension of credit in or about 1994 up through and including in or about 2001 from individuals referred to in the indictment as "Victim-1" and "Victim-2" in the Southern District of New York and elsewhere.

Second, that MR. CHRISTOPHER COLOMBO used extortionate means to collect or attempt to collect the extensions of credit from "Victim-1" and from "Victim-2."

Third, that MR. CHRISTOPHER COLOMBO participated knowingly in the use of extortionate means.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 32-6.

Count Eleven: Collection of Extensions of Credit by Extortionate Means - First Element - Collection of Extension of Credit

The first element of the offense which the government must establish beyond a reasonable doubt is that MR. CHRISTOPHER COLOMBO collected or attempted to collect an extension of credit in or about 1994 up through and including 2001 from "Victim-1" and "Victim-2" in the Southern District of New York and elsewhere.

To collect means simply, in any way, to induce a person to make a payment of money.  To extend credit means to make or renew any loan, or to enter into any agreement, tacit or express, whereby the repayment of a debt or the satisfaction of a claim may or will be deferred.  It makes no difference whether the debt or claim in question is valid or acknowledged, or how it may have arisen.

See Sand, Modern Federal Jury Instructions - Criminal; Form Instruction 32-7, citing, United States v. Bufalino, 576 F.2d 446 (2d Cir. 1978), cert. denied, 439 U.S. 928 (1979).

Count Eleven: Collection of Extensions of Credit by Extortionate
Means - Second Element - Use of Extortionate Means

     The second element of the offense which the government must prove beyond a reasonable doubt is that MR. CHRISTOPHER COLOMBO used extortionate means when he collected or attempted to collect the extensions of credit from "Victim-1" and from "Victim-2."

     The statute defines "extortionate means" as "any means which involves the use, or an express or implicit threat of use, of violence or other criminal means to cause harm to the person, reputation, or property of any person."  The defendant's actions need not generate actual fear.  You need only find that the defendant "intended to take actions which reasonably would induce fear in an ordinary person."  The second element, in other words, is directed at the conduct of the defendant, not at the state of mind of the victim.

     You should note that the phrase "other criminal means" does not include any use or threatened use of the legal system to collect payment on a loan - even if the loan in question is usurious, or even if the papers on which a legal action would be based (for example, mortgage papers or loan agreements) are fraudulent.  Use of fraudulent papers may result in other criminal penalties, but it is not extortionate under federal law. What *is* extortionate is a method of collection involving the use or threatened use of physical harm to persons or property, taking

or threatening to take property without a legal right to do so,

or other extralegal efforts to intimidate a debtor.

> See Sand, <u>Modern Federal Jury Instructions -
> Criminal</u>; Form Instruction 32-8, <u>citing</u>, <u>United States v.
> Pacione</u>, 738 F.2d 567 (2d Cir. 1984); <u>United States v.
> Gambino</u>, 566 F.2d 414 (2d Cir. 1977); <u>United States v.
> Sears</u>, 544 F.2d 585 (2d Cir. 1976).

**REQUEST NO. 65**

Count Eleven: Collection of Extensions of Credit by Extortionate
                Means - Third Element - Knowledge

The third element of the offense which the government must establish beyond a reasonable doubt is that MR. CHRISTOPHER COLOMBO knowingly participated in the use of extortionate means. Knowingly means to act voluntarily and purposely and not by mistake or accident or other innocent reasons.

See Sand, Modern Federal Jury Instructions - Criminal; Form Instruction 32-9, citing, United States v. Scotti, 47 F.3d 1237 (2d Cir.).

**REQUEST NO. 66**

<u>Count Sixteen: Making Extortionate Extensions of Credit</u>

The indictment charges ANTHONY COLOMBO, CHRISTOPHER COLOMBO and JOHN BERLINGIERI with making extortionate extensions of credit.  It reads in pertinent part:

[Read Indictment]

My previous instruction to you regarding section 892 of Title 18 of the United States Code also applies to this count.

<u>Adapted from</u> Sand, <u>Modern Federal Jury Instructions - Criminal</u>; Form Instruction 32-1.

**REQUEST NO. 67**

<u>Count Sixteen: Making Extortionate Extensions of Credit -
Elements of the Offense</u>

In order to prove the charge that MR. CHRISTOPHER COLOMBO made extortionate extensions of credit the government must establish each of the following elements beyond a reasonable doubt:

First, that MR. CHRISTOPHER COLOMBO made an extension of credit in or about 1999 up through and including in or about 2001 to an individual referred to in the indictment as "Victim-4" in the Southern District of New York.

Second, that there was an understanding between MR. CHRISTOPHER COLOMBO and "Victim-4," express or implied, tacit or otherwise, that if "Victim-4" delayed in making his repayments or if there was a total failure to repay, violence or other criminal means would be used to force repayment.

Third, that in doing so MR. CHRISTOPHER COLOMBO acted knowingly, willfully, and unlawfully.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 32-2.

**REQUEST NO. 68**

<u>Count Sixteen: Making Extortionate Extensions of Credit - First
Element - Extending Credit</u>

My previous instructions to you regarding this element also

applies to this count.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 32-3, <u>citing</u> <u>United States v.
Palmieri</u>, 456 F.2d 9 (2d Cir. 1972), <u>cert. denied</u>, 406 U.S.
945 (1973).

**REQUEST NO. 69**

<u>Count Sixteen: Making Extortionate Extensions of Credit - Second
Element - Possibility of Violence</u>

My previous instruction about the possibility of violence in
a charge of making extortionate extensions of credit also applies
here.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 32-4.

**REQUEST NO. 70**

<u>Counts Seventeen: Collection of Extensions of Credit by
Extortionate Means</u>

The indictment charges ANTHONY COLOMBO, CHRISTOPHER COLOMBO and JOHN BERLINGIERI with collecting extensions of credit by extortionate means.  It reads in pertinent part:

[Read Indictment]

My previous instruction to you regarding section 894 of Title 18 of the United States Code also applies to this count.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 32-5.

**REQUEST NO. 71**

<u>Count Seventeen: Extensions of Credit by Extortionate Means -
Elements of the Offense</u>

In order to prove the charge that MR. CHRISTOPHER COLOMBO violated section 894, the government must establish each of the following elements beyond a reasonable doubt:

First, that MR. CHRISTOPHER COLOMBO collected or attempted to collect an extension of credit in or about 1999 up through and including in or about 2001 from an individual referred to in the indictment as "Victim-4" in the Southern District of New York and elsewhere.

Second, that MR. CHRISTOPHER COLOMBO used extortionate means to collect or attempt to collect the extension of credit from "Victim-4."

Third, that MR. CHRISTOPHER COLOMBO participated knowingly in the use of extortionate means.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 32-6.

**REQUEST NO. 72**

<u>Count Seventeen: Collection of Extensions of Credit by
Extortionate Means - First Element - Collection of Extension of
Credit</u>

My previous instruction to you regarding the collection of

extensions of credit also applies here.

> <u>See</u> Sand, <u>Modern Federal Jury Instructions -
> Criminal</u>; Form Instruction 32-7, <u>citing</u>, <u>United States v.
> Bufalino</u>, 576 F.2d 446 (2d Cir. 1978), <u>cert. denied</u>, 439
> U.S. 928 (1979).

**REQUEST NO. 73**

<u>Count Seventeen: Collection of Extensions of Credit by
Extortionate Means - Second Element - Use of Extortionate Means</u>

My previous instruction to you as to this element of the

charge also applies here.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 32-8, <u>citing</u>, <u>United States v.
Pacione</u>, 738 F.2d 567 (2d Cir. 1984); <u>United States v.
Gambino</u>, 566 F.2d 414 (2d Cir. 1977); <u>United States v.
Sears</u>, 544 F.2d 585 (2d Cir. 1976).

**REQUEST NO. 74**

<u>Count Seventeen: Collection of Extensions of Credit by
Extortionate Means - Third Element - Knowledge</u>

My previous instruction to you as to this element of the

charge also applies here.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 32-9, <u>citing</u>, <u>United States v.
Scotti</u>, 47 F.3d 1237 (2d Cir.).

**REQUEST NO. 75**

<u>Count Eighteen: Making Extortionate Extensions of Credit</u>

The indictment charges CHRISTOPHER COLOMBO and JOHN

BERLINGIERI with making extortionate extensions of credit.  It

reads in pertinent part:

[Read Indictment]

My previous instruction to you about section 892 of Title 18

of the United States Code also applies to this count.

<u>Adapted from</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 32-1.

**REQUEST NO. 76**

<u>Count Eighteen: Making Extortionate Extensions of Credit -
Elements of the Offense</u>

In order to prove the charge that MR. CHRISTOPHER COLOMBO made extortionate extensions of credit the government must establish each of the following elements beyond a reasonable doubt:

First, that MR. CHRISTOPHER COLOMBO made an extension of credit in or about 2000 up through and including in or about 2001 to an individual referred to in the indictment as "Victim-5" in the Southern District of New York.

Second, that there was an understanding between MR. CHRISTOPHER COLOMBO and "Victim-5," express or implied, tacit or otherwise, that if the "Victim-5" delayed in making his repayments or if there was a total failure to repay, violence or other criminal means would be used to force repayment.

Third, that in doing so MR. CHRISTOPHER COLOMBO acted knowingly, willfully, and unlawfully.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 32-2.

**REQUEST NO. 77**

<u>Count Eighteen: Making Extortionate Extensions of Credit -
Extending Credit</u>

My previous instruction about this element is also

applicable here.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 32-3, <u>citing</u> <u>United States v.
Palmieri</u>, 456 F.2d 9 (2d Cir. 1972), <u>cert. denied</u>, 406 U.S.
945 (1973).

**REQUEST NO. 78**

Count Eighteen: Making Extortionate Extensions of Credit -
Possibility of Violence

My previous instruction as to this element also applies

here.

See Sand, Modern Federal Jury Instructions -
Criminal; Form Instruction 32-4.

**REQUEST NO. 79**

<u>Count Nineteen: Collection of Extensions of Credit by
Extortionate Means</u>

The indictment charges CHRISTOPHER COLOMBO and JOHN

BERLINGIERI with collecting extensions of credit by extortionate

means.  It reads in pertinent part:

[Read Indictment]

My previous instruction about section 894 of Title 18 of the

United States Code also applies to this count.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 32-5.

**REQUEST NO. 80**

<u>Count Nineteen: Extensions of Credit by Extortionate Means –
Elements of the Offense</u>

In order to prove the charge that MR. CHRISTOPHER COLOMBO violated section 894, the government must establish each of the following elements beyond a reasonable doubt:

First, that MR. CHRISTOPHER COLOMBO collected or attempted to collect an extension of credit in or about 2000 up through and including in or about 2001 from an individual referred to in the indictment as "Victim-5" in the Southern District of New York and elsewhere.

Second, that MR. CHRISTOPHER COLOMBO used extortionate means to collect or attempt to collect the extension of credit from "Victim-5."

Third, that MR. CHRISTOPHER COLOMBO participated knowingly in the use of extortionate means.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 32-6.

**REQUEST NO. 81**

<u>Count Nineteen: Collection of Extensions of Credit by</u>
<u>Extortionate Means - Collection of Extension of Credit</u>

My previous instruction to you regarding the collection of

extensions of credit also applies here.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -</u>
<u>Criminal</u>; Form Instruction 32-7, <u>citing</u>, <u>United States v.</u>
<u>Bufalino</u>, 576 F.2d 446 (2d Cir. 1978), <u>cert. denied</u>, 439
U.S. 928 (1979).

**REQUEST NO. 82**

<u>Count Nineteen: Collection of Extensions of Credit by
Extortionate Means - Use of Extortionate Means</u>

My previous instruction as to this element also applies

here.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 32-8, <u>citing</u>, <u>United States v.
Pacione</u>, 738 F.2d 567 (2d Cir. 1984); <u>United States v.
Gambino</u>, 566 F.2d 414 (2d Cir. 1977); <u>United States v.
Sears</u>, 544 F.2d 585 (2d Cir. 1976).

**REQUEST NO. 83**

<u>Count Nineteen: Collection of Extensions of Credit by
Extortionate Means - Knowledge</u>

My previous instruction to you regarding this element also

applies here.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 32-9, <u>citing</u>, <u>United States v.
Scotti</u>, 47 F.3d 1237 (2d Cir.).

**REQUEST NO. 84**

<u>Count Twenty: Conspiracy to Extort EDP</u>

The indictment charges ANTHONY COLOMBO and CHRISTOPHER
COLOMBO with conspiracy to violate 18 U.S.C. § 1951, known as The
Hobbs Act.

My previous instruction regarding the nature of a conspiracy
also applies here.

> <u>See</u> Sand, <u>Modern Federal Jury Instructions -
> Criminal</u>; Form Instruction 19-1, 19-2, <u>citing</u> <u>Callanan v.
> United States</u>, 364 U.S. 587 (1961); <u>Pereira v. United
> States</u>, 347 U.S. 1 (1954).

# REQUEST NO. 85

<u>Count Twenty: Conspiracy to Extort EDP - Elements of Conspiracy</u>

In order to satisfy its burden of proof, the government must establish each of the following four essential elements beyond a reasonable doubt:

First, that two or more persons entered an agreement to obstruct interstate commerce by extortion of EDP Entities starting in or about 1999 up through and including in or about 2002;

Second, that MR. CHRISTOPHER COLOMBO knowingly and willfully became a member of the conspiracy;

Third, that one of the members of the conspiracy knowingly committed at least one of the overt acts charged in the indictment; and

Fourth, that the overt act(s) which you find to have been committed was (were) committed to further some objective of the conspiracy.

> <u>See</u> Sand, <u>Modern Federal Jury Instructions -</u>
> <u>Criminal</u>; Form Instruction 19-3, <u>citing</u>, <u>Ingram v. United</u>
> <u>States</u>, 360 U.S. 672 (1959); <u>United States v. Marchese</u>, 438
> F.2d 452 (2d Cir.) (per curiam), <u>cert. denied</u>, 402 U.S. 1012
> (1971).

**REQUEST NO. 86**

<u>Count Twenty: Conspiracy to Extort EDP - First Element -
Existence of Agreement</u>

My previous instruction as to the existence of the

agreement in a charged conspiracy also applies to this count.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 19-4.

**REQUEST NO. 87**

<u>Count Twenty: Conspiracy to Extort EDP - Second Element -
Membership in the Conspiracy</u>

My previous instruction as to membership in a conspiracy

also applies here.

<u>See</u> Sand, <u>Modern Federal Jury Instructions -
Criminal</u>; Form Instruction 19-6.

**REQUEST NO. 88**

<u>Count Twenty: Conspiracy to Extort EDP - Commission of Overt Act</u>

The third element which the government must prove beyond a reasonable doubt, to establish the offense of conspiracy, is that at least one of the overt acts charged in the indictment was knowingly committed by at least one of the conspirators, at or about the time and place alleged.

The indictment charges that the following overt acts were committed in the Southern District. [Read overt acts.]

My previous instruction about proof of overt acts also applies here.

<u>See</u> Sand, <u>Modern Federal Jury Instructions - Criminal</u>; Form Instruction 19-7.

**REQUEST NO. 89**

<u>Count Twenty: Conspiracy to Extort EDP – Commission of Overt Act
in Furtherance of the Conspiracy</u>

My previous instruction regarding the commission of an overt

act in furtherance of a charged conspiracy also applies here.

<u>See</u> Sand, <u>Modern Federal Jury Instructions –
Criminal</u>; Form Instruction 19-8.

## REQUEST NO. 90

### Credibility of Witnesses

Now I come to one of the more important issues for all juries in any trial, the issue of credibility.

You must now consider whether the witnesses were both truthful and accurate. A witness could believe that he or she was being truthful, yet be mistaken and not able to recall facts accurately. Also, a witness could take the oath and still intentionally testify falsely.

I am going to give you a few general instructions as to how you go about determining whether witnesses are credible and reliable. I told you at the beginning of trial that it was important for you to listen and observe carefully the witnesses as they testified and to think about their testimony as they gave it.

You must now consider whether the witnesses told the truth and whether they knew what they were talking about. How do you determine that? It is really just a matter of your using your common sense, your good judgment, and your experience.

First of all, consider how good an opportunity did the witness have to observe or hear what he or she testified about. The witness may be honest, but mistaken. How did the witness' testimony impress you? Did the witness appear to be testifying honestly, candidly? Were the witness' answers direct or evasive? Consider the witness' demeanor, his or her manner of testifying.

Consider the strength and accuracy of the witness' recollection. Consider the substance of the testimony. Decide whether or not a witness was straightforward, or whether he or she attempted to conceal anything. How does the witness' testimony compare with other proof in the case? Is it corroborated or is it contradicted by other evidence? If there is a conflict, which side seems more reliable?

If a witness made statements in the past that are inconsistent with his or her testimony during the trial concerning facts that are at issue here, you may consider that fact in deciding how much of his or her testimony, if any, to believe. In making this determination, you may consider whether the witness purposely made a false statement, or whether it was an innocent mistake. You may also consider whether the inconsistency concerns an important fact or whether it had to do with a small detail, as well as whether the witness had an explanation for the inconsistency and if so, whether that explanation appealed to your common sense.

In addition, you may consider whether a witness had any possible bias, any relationship to a party, any motive to testify falsely or any possible interest in the outcome of the case. Such a bias or relationship does not necessarily make the witness unworthy of belief. These are simply factors that you may consider.

If you find that a witness has testified falsely as to any material fact or if you find that a witness has been previously untruthful when testifying under oath or otherwise, you may reject that witness' testimony in its entirety or you may accept only those parts that you believe to be truthful or which are corroborated by other independent evidence in the case.

It is for you, the jury, and for you alone, not the lawyers, not any of the witnesses, and not me as the judge, to decide the credibility of witnesses who appeared here and the weight which their testimony deserves.

You must remember that you bring your background, common sense, good judgment and life experiences with you into the jury room during your deliberations.  However, you may not use your experience and common sense to fill in or create evidence that does not exist.  You use them only to draw reasonable inferences from proven fact or to weigh and evaluate the evidence provided during the trial.

Adapted from Sand, <u>Modern Federal Jury Instructions-Criminal</u>; Form Instruction 7-1; citing <u>US v. Corr</u>, 543 F.2d 1042 (2d Cir. 1976); <u>US v. Scotto</u>, 641 F.2d 47 (2d Cir. 1980); and Federal Judicial Center, Criminal Pattern Instruction 23.

**REQUEST NO. 91**

<u>Impeachment by Prior Inconsistent Statement</u>
[If applicable.]

You have heard evidence that witnesses made statements on an earlier occasion which counsel argues is inconsistent with the witnesses' trial testimony. Evidence of a prior inconsistent statement is not to be considered by you as affirmative evidence bearing on the defendant's guilt or non-guilt. Evidence of the prior inconsistent statement was placed before you for the more limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself. If you find that the witness made an earlier statement that conflicts with his trial testimony, you may consider that fact in deciding how much, if any, of his trial testimony to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much, if any, weight to be given to the inconsistent statement in determining whether to believe all or part or none of the witness' testimony.

Adapted from Modern Federal Jury Instructions-
Criminal; Part II Substantive Instructions; Ch. 7,
Form Instruction 7-19; citing <u>US v. Rogers</u>, 549
F.2d 490 (8th Cir. 1976); <u>Kane v. US</u>, 431 F.2d 172
(8th Cir. 1976).

**REQUEST NO. 92**

<u>Impeachment by Felony Conviction</u>

You have heard testimony of witnesses who were previously convicted of a crime, punishable by more than one year in jail and involving dishonesty. This prior conviction was put into evidence for you to consider in evaluating those witnesses' credibility. You may consider the fact that the witness who testified is a convicted felon in deciding how much of his testimony to accept and what weight, if any, it should be given.

> Adapted from <u>Modern Federal Jury Instructions-Criminal</u>; Form Instruction 7-12; citing <u>US v. Corcione</u>, 549 F.2d 111 (2d Cir), *cert. Denied,* 440 U.S. 975 (1979); and <u>US v. DeLoach</u>, 34 F.3d 1001 (11th Cir. 1994).

<u>Accomplices Called By the Government</u>
[If applicable.]

You have heard from a number of witnesses who testified that they were actually involved in planning and carrying out certain of the crimes charged in the Indictment. Some of these witness have testified under the terms of a plea agreement or grant of immunity. There has been a great deal said about these so-called accomplice witnesses in the summations of counsel and whether or not you should believe them.

The Government argues that it must take its witnesses as it finds them and frequently must use such testimony in a criminal prosecution, because otherwise it would be difficult or impossible to detect and prosecute wrongdoers. The testimony of such accomplices is properly considered by the jury. If accomplices could not be used, there would be many cases in which a guilty person could not be prosecuted and convictions could not be obtained. Indeed, it is the law in federal courts that the testimony of an accomplice may be enough in itself for conviction, if the jury believes that the testimony establishes guilt beyond a reasonable doubt.

However, it is also the case that accomplice testimony is of such nature that it must be scrutinized with great care and viewed with particular caution when you decide how much of that testimony to believe. These witness have an interest in the case

different than other witnesses.  A witness who may be able to obtain his freedom or receive a more favorable sentence may have a motive to shape his testimony.  The possibility of a reduced or no sentence if the AUSA writes a 5K1 letter to the court, stating that the witness has given truthful testimony and substantial cooperation gives the witness a direct, personal stake in the defendant's conviction.  The fact that the opportunity for a lesser sentence was not simply guaranteed in the agreement, but was expressly made contingent in the agreement on the government's satisfaction with the end result, served only to strengthen any incentive to testify falsely in order to secure a conviction.  Therefore, the fact that a witness is an accomplice can be considered by you as bearing upon his or her credibility. You should consider the witnesses' hopes or expectations of future benefits in judging their credibility.

However, it is not true that, simply because a person has admitted participating in one or more crimes, he or she is incapable of giving a truthful version of what happened. Like the testimony of any other witness, accomplice witness testimony should be given such weight as it deserves in light of the facts and circumstances before you, taking into account the witness's demeanor and candor, the strength and accuracy of his or her recollection, his background, and the extent to which the testimony is or is not corroborated by other evidence in the case.

You may consider whether an accomplice witness -- like any other witness called in this case -- has an interest in the outcome of the case, and if so, whether it has affected his or her testimony.  You heard testimony about various agreements between the Government and the witnesses.  While, I caution you that it is no concern of yours why the Government made an agreement with a witness, you may consider the fact that an agreement exists and how it may impact on the truthfulness of that particular witness' testimony.  Your sole concern is whether a witness has given truthful testimony here in this courtroom before you.

In evaluating the testimony of accomplice witnesses, you should ask yourselves whether these accomplices would benefit more by lying, or by telling the truth.  Was their testimony made up in any way because they believed or hoped that they would somehow receive favorable treatment by testifying falsely?  Or did they believe that their interests would be best served by testifying truthfully?  If you believe that the witness was motivated by hopes of personal gain, was the motivation one that would cause him to lie, or was it one that would cause him to tell the truth?  Did this motivation color his testimony?  If you find that the testimony was false, you should reject it.  However, if, after a cautious and careful examination of an accomplice witness's testimony and demeanor on the witness stand,

you are satisfied that the witness told the truth, you should

accept it as credible and act upon it accordingly.

As with any witness, let me emphasize that the issue of

credibility need not be decided in an all-or-nothing fashion.

Even if you find that a witness testified falsely in one part,

you still may accept his or her testimony in other parts, or you

may disregard all of it.  That is a determination entirely for

you.

> Adapted from the charge approved in <u>United
> States</u> v. <u>Projansky</u>, 465 F.2d 123, 136-37  n.
> 25 (2d Cir.), from the charge of the Hon. John
> F. Keenan in <u>United States</u> v. <u>Carrero</u>, 91 Cr.
> 365 (S.D.N.Y. 1991), from the charge of Judge
> Keenan in <u>United States v. Figueroa et. al</u>, 88
> Cr 859(JFK); and from Sand, <u>Modern Federal
> Jury Instructions</u>, Instr. 7-5.   <u>See also</u>
> <u>United States v. Bagley</u>, 473 U.S. 667, 683
> (1985); <u>United States</u> v. <u>Gleason</u>, 616 F.2d 2,
> 15 (2d Cir. 1979) ("Where the court points out
> that testimony of certain types of witnesses
> may  be  suspect  and  should  therefore  be
> scrutinized and weighed with care, such as
> that of accomplices or coconspirators . . . it
> must also direct the jury's attention to the
> fact that it may well find these witnesses to
> be truthful, in whole or in part." (citations
> omitted)); <u>United States</u> v. <u>Cheung Kin Ping</u>,
> 555 F.2d 1069, 1073 (2d Cir. 1977); <u>see also</u>
> <u>United States</u> v. <u>Swiderski</u>, 539 F.2d 854, 860
> (2d Cir. 1976) (can be reversible error not to
> give accomplice witness charge if requested by
> defense).

**REQUEST NO. 94**

<u>Government Informers</u>
[If applicable.]

There has been testimony before you with respect to the fact that the government used the services of a confidential informant to obtain leads and to gain introduction to persons suspected of violating the law.  There is nothing improper or illegal about the government's use of informants.  Whether or not you approve of the use of informants in an effort to detect criminal activity is not to enter into your deliberations.

However, it is also the case that an informant's testimony is of such a nature that is must be scrutinized with great care and viewed with special caution.  You should consider whether he received any benefit or promises from the government which would motivate him to testify falsely against the defendant.  For example, he may believe that he will only continue to receive those benefits if he produces evidence of criminal conduct.

Like the testimony of any other witness, an informant's testimony should be given the weight, if any, you determine it deserves in light of all the facts and circumstances.

> See Sand, <u>Modern Federal Jury Instructions -
> Criminal</u>;  Form Instruction 7-14; citing <u>US v.
> Delicata</u>, 584 F.3d 974 (2d Cir. 1978); <u>US v.
> McCarty</u>, 36 F.3d 1349 (5th Cir. 1994); <u>US v.
> Jackson</u>, 84 F.3d 1154 (9th Cir. 1995).

**REQUEST NO. 95**

<u>Evidence of Past Acts</u>
[If applicable.]

The government has offered evidence of MR. CHRISTOPHER COLOMBO'S alleged past criminal acts.

Let me remind you that the defendant is not on trial for committing any act not alleged in the Indictment.  Accordingly, you may not consider any testimony concerning past acts as a substitute for proof that the defendant committed the crime charged.  Nor may you consider this evidence as proof that CHRISTOPHER COLOMBO has a criminal propensity or bad character. The evidence of other, past acts was admitted for a much more limited purpose, to wit: **[to be determined]** and you may consider it only for that limited purpose.

Evidence of similar acts may not be considered by you for any other purpose.  Specifically, you may not use this evidence to conclude that because MR. CHRISTOPHER COLOMBO may have committed the other acts he must have also committed the acts charged in the Indictment.

> Adapted from Sand, <u>Modern Federal Jury Instructions-Criminal</u>; Form Instruction 5-25 and 5-26.

**REQUEST NO. 96**

<u>Law Enforcement Witnesses</u>

You have heard the testimony of law enforcement officials. The fact that a witness may be employed as a law enforcement official or employee does not mean that his or her testimony is necessarily deserving of more or less consideration or greater or lesser weight than that of an ordinary witness.

At the same time, it is quite legitimate to argue that the credibility of a law enforcement witness may be colored by a personal or professional interest in the outcome of the case.

It is your decision, after reviewing all the evidence, whether to accept the testimony of the law enforcement witness or witnesses and to give to that testimony the weight, if any, you find it deserves.

> <u>See</u> Sand, <u>Modern Federal Jury Instructions-Criminal</u>; Form Instruction 7-16; citing <u>Bush v. United States</u>, 375 F.2d 602 (D.C. Cir. 1967) and <u>US v. Bethancourt</u>, 65 F.3d 1074 (3d Cir. 1995) *cert denied*, 516 U.S. 1153 (1996).

**REQUEST NO. 97**

<u>Transcripts of Tape Recordings</u>

The government has been permitted to hand out a typed document which it prepared containing the government's interpretation of what appears on the tape recordings which have been received as evidence. Those were given to you as an aid or guide to assist you in listening to the tapes. However, they are not in and of themselves evidence. Therefore, when the tapes were played I advised you to listen very carefully to the tapes themselves. You alone should make your own interpretation of what appears on the tapes based on what you heard. If you think you heard something differently that appeared on the transcript then what you heard is controlling.

Let me say again, you, the jury, are the sole judges of the facts.

<u>See</u> Sand, <u>Modern Federal Jury Instructions-Criminal</u>; Form Instruction 5-9.

**REQUEST NO. 98**

<u>Interest of Testifying Defendant</u>
[If applicable.]

CHRISTOPHER COLOMBO has elected to testify.  You should examine and evaluate his testimony just as you would the testimony of any other witness with an interest in the outcome of this case.  You should not disregard or disbelieve his testimony simply because he is charged as a defendant in this case.

I must remind you however that the fact that MR. CHRISTOPHER COLOMBO has chosen to testify does not shift the burden of proof from the government to him, the defendant.  The government is still required to prove the defendant's guilt beyond a reasonable doubt.  That burden never shifts.

<u>See</u> Sand, <u>Modern Federal Jury Instructions-Criminal</u>;
Form Instruction 7-4.

**REQUEST NO.**

<u>Defendant's Right Not To Testify</u>
[If applicable.]

CHRISTOPHER COLOMBO has chosen not to testify in this case. Under our Constitution, he has no obligation to testify or to present any other evidence, because it is the government's burden to prove him guilty beyond a reasonable doubt.  That burden remains with the government throughout the entire trial and never shifts to the MR. CHRISTOPHER COLOMBO.  A defendant is never required to prove that he is innocent.

You may not and must not attach any significance to the fact that MR. CHRISTOPHER COLOMBO did not testify.  No adverse inference against him may be drawn by you because he did not take the witness stand.  There may be any number of reasons which are perfectly innocent for him not testifying.  He may be nervous, he may stammer when he speaks, he may have an unattractive voice. There are hundreds of possible reasons.  It is simply a matter you should not consider and I am instructing you, as a matter of law, not to.  You may not consider this against MR. CHRISTOPHER COLOMBO in any way in your deliberations in the jury room.

<u>See</u> Sand, <u>Modern Federal Jury Instructions
 - Criminal</u>; Form Instruction 5-21;

## Conclusion

Your function now is to weigh the evidence in this case and to determine whether the government has proven the elements of each count of the Indictment beyond a reasonable doubt. I must remind you that when you are considering each of the counts charged, each and every element of each charge must be proven beyond a reasonable doubt. If any one or more of the elements are not proven to your satisfaction on any count, then you must find MR. CHRISTOPHER COLOMBO not guilty of that count.

You must base your verdict solely on the evidence and these instructions as to the law, and you are obliged under your oath as jurors to follow the law as I have instructed you, whether you agree or disagree with the particular law in question.

The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree to it. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another, and to deliberate with a view toward reaching an agreement, if you can possibly do so without violence to individual judgment. Each of you must decide the case for himself or herself, but do so only after an impartial discussion and consideration of all the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views, and change an opinion if convinced it is erroneous. But do not

surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors.

Remember at all times, you are not partisans. You are judges – judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

If you are divided, do <u>not</u> report how the vote stands, and if you have reached a verdict, do not report what it is until you are asked in open court.

In conclusion, ladies and gentlemen, I am sure that, if you listen to the views of your fellow jurors and apply your own common sense, you will reach a fair verdict.

Remember that your verdict must be rendered without fear, without favor, and without prejudice or sympathy.

> Adapted from the charge of Judge Robert L. Carter in <u>United</u> <u>States</u> v. <u>Nosov</u>, S3 00 Cr. 314 (RLC); the charge of Judge Arnold Bauman in <u>United</u> <u>States</u> v. <u>Soldaro</u>, 73 Cr. 167 (S.D.N.Y. 1973).

Dated:    New York, New York
          December 21, 2006

                    **ROTHMAN, SCHNEIDER,**
                    **    SOLOWAY & STERN, LLP**
                    **Attorneys for CHRISTOPHER COLOMBO**
                    **100 Lafayette Street, Ste 501**
                    **New York, New York  10013**
                    **(212) 571-5500**


                    _____
                    **BY: JEREMY SCHNEIDER**